MARION F. EDWARDS, Chief Judge.
| gPlaintiff/appellant, Salvatore Ficarra, appeals a judgment of the trial court that granted a motion filed by defendant/appel-lee, Fay Pauline Westbrook (Salvatore Fi-carra’s ex-wife), to increase child support and that denied his motion to decrease child support. Ms. Westbrook has answered the appeal seeking a change in the award of interest. We affirm.
Salvatore Ficarra (“Mr. Ficarra”) and Fay Pauline Ficarra (now Westbrook) (“Ms. Westbrook”) were married on January 1, 1991. One child was born of the marriage on August 1, 1991. The parties separated on November 11, 1994, and, on February 16, 1995, Mr. Ficarra filed a petition for divorce. By virtue of a consent judgment rendered on November 16, 1995, and signed on January 9, 1996, Ms. Westbrook was given sole custody of the minor child. The judgment also provided that Mr. Ficarra pay $550 in monthly child support.
On July 1, 2001, Ms. Westbrook filed a motion to increase child support alleging a substantial change of circumstances involving the health of the child. The motion asserted that the child had a serious heart problem, which required surgery and caused seizures, and had been diagnosed with Attention Deficit, Hyper Activity Disorder. Ms. Westbrook stated that, because of the child’s medical laproblems, he is unable to attend public school and is now enrolled in John Curtis Christian School.[1]
On May 25, 2004, Mr. Ficarra filed a motion to reduce child support alleging that he suffered a heart attack on January 22, 2004, was unable to work, and had applied for disability payments. The child support matters were held open for the parties to depose a representative of John Curtis Christian School and to submit a transcript of a June 13, 2005 Social Security hearing on Mr. Ficarra’s disability claim. The results of that hearing are not certain from this designated record. However, it appears that Mr. Ficarra’s claim was successful and that his son is also now receiving benefits.
The matter went to a hearing officer for a recommendation. The hearing officer recommended an increase in child support for July 12, 2001 through June 30, 2004[2] requiring Mr. Ficarra to pay an additional sum of $16,670. Mr. Ficarra filed an objection to the recommendation in the district court and the matter was heard on March 30, 2010.
After the hearing, the trial court rendered judgment granting Ms. Westbrook’s increase in child support, denying Mr. Fi-carra’s motion to decrease child support, and ordering Mr. Ficarra to pay a total of $15,719.50 to Ms. Westbrook for the period of 2001 (when the motion to increase was filed) and 2004 (when Mr. Ficarra and his son began receiving disability). The amount was made executory, and Mr. Fi-carra was ordered to pay interest from the date of judgment until paid. Mr. Ficarra appealed the judgment. Ms. Westbrook filed an answer to the appeal seeking interest from the due date of each payment.

\ ¿LAW AND ANALYSIS

In brief to this Court, Mr. Ficarra contends the trial court erred in ruling that an increase in child support was warranted. Mr. Ficarra assigns four errors for our review. The first three involve factual findings made by the trial court. Mr. *552 Ficarra argues the trial court erred in finding:
1) that Ms. Westbrook was entitled to an increase in child support, and that Mr. Ficarra was not entitled to a decrease in child support;
2) that Mr. Ficarra was obligated to pay his pro rata share of a camp/child care expense; and
3) an extraordinary expense for education involving private school tuition.
The appellate court’s review of factual findings is governed by the manifest error-clearly wrong standard. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court; and 2) whether the record further establishes that the finding is not manifestly erroneous.[3] Therefore, where there is a reasonable basis in the record to support the trial court’s finding of fact, our inquiry is whether that factual finding is manifestly erroneous. Further, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous.[4] The manifest error standard of review obligates an appellate court to give great deference to the trial court’s findings of fact. We will not reverse factual determinations, absent a finding of manifest error.[5] More specifically, the trial court’s order of child support is entitled to great weight and will not be disturbed on appeal absent clear abuse of discretion.[6]
IsThe trial judge gave written Reasons for Judgment in which he set forth his factual findings supporting the judgment. The trial judge stated
Based on the testimony of the parties and the evidence submitted, the Court finds that Mr. Ficarra’s gross monthly income for the relevant time period was $6,000.00; and that Mrs. Westbrook’s gross monthly income was $1,143.41. As such, the Child Support Guideline mandates a basic child support obligation of $895.58/month....
In addition to the basic monthly obligation, the Court finds an extraordinary expense for camp/child care in the amount of $41.66/month. The Court also finds an extraordinary expense for education in the amount of $383/ month.... These extraordinary expenses increase the basic obligation to $1,320.24/month.
We find these factual findings are adequately supported by the record.
Mr. Ficarra, who was sixty years old at the time of the hearing, stated that he has been a bench technician, working on starters and alternators for his entire life until he became disabled after a heart attack in 2004. In 1993, his twenty-two-year-old daughter, Melissa, incorporated Starting Systems & Services, Incorporated (Starting Systems).[7] At the time of the incorporation, Ms. Westbrook was the president of the corporation; however, after the divorce, Mr. Ficarra became the president. Although Mr. Ficarra admitted to holding the office of president of the company, he testified he knew nothing about the fi *553 nances or even if the company filed a corporate tax return. He denied any conversations with the company’s accountant regarding the finances or how certain items and expenses should be listed on the books of the company. Essentially, Mr. Ficarra’s testimony was that his daughter ran the business, and he stayed in the shop and worked on starters and alternators.
Mr. Ficarra testified that he was a direct employee of Starting Systems, but he never received a W-2 or a 1099 form to show income. Mr. Ficarra’s tax returns for the years 2001 through 2004 were introduced into evidence. The only reported | (¡income is from Starting Systems, and the returns shows that Mr. Ficarra earned $6,750 in 2001; $8,150 in 2002; $6,150 in 2003; and nothing in 2004.
Mr. Ficarra testified that the reported income was correct but admitted other information on the tax returns for 2001, 2002, and 2003, such as the earned income credit, was not truthful. Mr. Ficarra claimed the credit all three years by declaring that his son lived with him all year, despite the fact that the child lived with his mother the entire time.
Mr. Ficarra testified that he received very little money per month from Starting Systems, but he explained that the company paid his truck note, gas, insurance, toll tags, and uniforms. Mr. Ficarra was presented with evidence that he applied for vehicle loans in 1998 and 2000. The loan applications indicate that Mr. Ficarra is the owner of Starting Systems and that his income is $60,000 to $80,000 per year. Mr. Ficarra either denied signing the loan applications or stated that he did not remember applying for the loans. Mr. Ficarra could not recall if he was the personal guarantor on the business property lease. He did recall personally guaranteeing a loan for his daughter, but he could not recall what he represented his income to be on the application. Mr. Ficarra also stated that he may have made other loans for the business, but he does not remember.
Ms. Westbrook contradicted the testimony of her husband. She acknowledged that she was the incorporator of Starting Systems and that her husband ran the business and made all of the management decisions. Ms. Westbrook stated that Mr. Ficarra’s daughter was not involved much in the business.
Mr. Ficarra was questioned about certain accounting entries in the company’s books. He stated that he received some funds every year entered as “cost of goods sold” and “loan to manager for his personal use.” However, he |7testified that he could not remember how much and had no accounting of anything that was paid back on the loan.
Leo Seago, who purchased the company in October 2005, testified that, in his negotiations to purchase the company, he met with both Mr. Ficarra and his daughter, Melissa. However, he believed Mr. Ficar-ra was the actual owner of the business. Mr. Seago understood that the reason Starting Systems was up for sale was that Mr. Ficarra had a heart attack and could no longer operate the business.
In his due diligence before the purchase, Mr. Seago found some accounting irregularities that he questioned. In response to the questions, Mr. Ficarra confirmed that his and Melissa’s salaries were contained in cost of goods sold for tax purposes. Further, it was explained that the loan to manager was money taken for personal use. Mr. Seago acknowledged that there is a lawsuit pending regarding his purchase of Starting Systems to which he has filed a counter claim.
The deposition of John deVay is also contained in the record and shows that he *554 is a certified public accountant who prepared certain financial statements for Starter Systems when the company attempted to get financing. In the preparation of these documents he used information supplied to him by Melissa Ficarra. From the testimony and the documentation attached to the deposition, it is clear that Starter Systems elected to make loans to its general manager instead of paying a salary. No salaries for either Mr. Ficarra or Melissa Ficarra are shown on the balance sheets for years 2000 through 2004. Mr. deVay could not recall if he prepared the income tax returns for the company or for either of the individuals involved. Further, Mr. deVay did not know where the funds loaned to the managers were taken from or to which individual the funds were loaned.
| ^Attached to the deposition is a letter written to Starting Systems in March of 2004. In the letter, Mr. deVay states, “[T]he company has elected to loan its General Manager advances instead of reflecting said advances as a salary....” The financial balance sheets attached show that the figures for the “loans to manager” were $89,012 in 2001; $25, 267 in 2002; $100,000 in 2003; and $69,481 in 2004.
Bruce Miller, the Special Master who was appointed to determine the assets and liabilities of the community, the reimbursement claims, and Mr. Ficarra’s earnings for child support purposes, testified at the hearing. He stated that Mr. Ficarra’s earnings for the years of 2001 through 2004 were difficult to ascertain. However, considering the tax returns, the financial obligations listed in Mr. Ficarra’s bankruptcy proceeding in 2005, repayments of loans to his brother, and the fact that he owned an expensive race car, Mr. Miller estimated Mr. Ficarra’s income was $2,400 and $5,000 per month. However, Mr. Miller stated that he believed it was closer to the $5,000 per month level. He also imputed an additional $1,000 per month to that figure due to the fact that Mr. Ficarra was living in a home owned by a friend and not paying rent.
Ms. Westbrook testified as to her earnings during the period in question and her testimony is supported by her tax returns. The testimony and amounts show that the trial court’s determination of her monthly income is accurate.
Ms. Westbrook testified that, when she and Mr. Ficarra separated, they agreed that their son would always attend a private school. Mr. Ficarra denied making that agreement. Ms. Westbrook stated that Mr. Ficarra would often pay the bill for tuition in cash. Mr. Ficarra denies ever paying tuition for his son. He also denied knowing any justification for placing his son in a private school. | ^However, Mr. Ficarra admitted that, during the marriage, his son was enrolled in a private school.
After the separation, Ms. Westbrook made the decision to transfer him from Kehoe France to John Curtis for third grade because it was less expensive and was recommended to her by mutual friends. Mr. Ficarra agreed to the transfer, and the child was enrolled at John Curtis for the period of 2001 through 2004. Mr. Ficarra denied that he agreed to the transfer.
In her testimony, Ms. Westbrook outlined the cost of her son’s education and introduced the supporting documents. We find this testimony consistent with the findings of the trial court’s computation. She explained that her son had open heart surgery and had Attention Deficit Disorder. He required a low student to teacher ratio to learn. Given his medical condition, Ms. Westbrook felt it was necessary to have her son enrolled in a private school.
*555 Ms. Westbrook also testified that she was able to survive on her income and the $550 per month child support only with financial help from her parents and friends. Some of the money received was in the form of a loan of $50,000 from her parents that Ms. Westbrook intends to repay in full. She is currently making payments on that loan. In April of 2005,. she received a check in the amount of $7,655 from the Social Security Administration for her son because of Mr. Ficar-ra’s disability.
This Court has recently stated:
The trier of fact determines the credibility of witnesses, and within the bounds of rationality, may accept or reject the testimony.... It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.... When findings of fact are based on the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings.... [8]
11ftMr. Ficarra argues the trial court abused its discretion in finding that his income was $6,000 per month when his tax returns show an average of $584.72 per month. Mr. Ficarra also argues the trial court erred in its finding of Ms. West-brook’s earnings.
Clearly, the trial court found Mr. Ficarra’s testimony that he gave up a lifelong trade rebuilding starters and alternators to work for his twenty-one-year-old daughter’s new company at an income below minimum wage incredible. Rather, the trial court considered the testimony of the Special Master, the company’s accountant, and the balance sheets of the company in making the finding that Mr. Ficarra’s income during the years in question was $6,000 per month. We find no abuse of discretion in that finding. Further, the trial court found Ms. Westbrook’s testimony regarding her income credible. We find no abuse of discretion in that finding, and we find no merit to Mr. Ficarra’s assertion that the trial judge erred in granting an increase in child support.
Mr. Ficarra also argues the trial court abused its discretion in finding a camp/child care expense and a private school expense.
La. R.S. 9:315(0(7) provides that “ ‘net child care costs’ means the reasonable costs of child care incurred by a party due to employment or job search, minus the value of the federal income tax credit for child care.” Mr. Ficarra argues that the trial judge did not abide by the provisions of this law. However, it is clear from the Reasons for Judgment, that the trial court found this expense to be an extraordinary education expense, not a simple childcare expense.
Therefore, the applicable statute is La. R.S. 9:315.6, which reads as follows:
By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:
(1) Expenses of tuition, registration, books, and supply fees ^required for attending a special or private elementary or secondary school to meet the needs of the child.
(2) Any expenses for transportation of the child from one party to the other.
(3) Special expenses incurred for child rearing intended to enhance the health, *556 athletic, social, or cultural development of a child, including but not limited to camp, music or art lessons, travel, and school sponsored extracurricular activities.[9]
A trial court’s determination of whether to include private school tuition and camp costs in a basic child support obligation will not be disturbed absent an abuse of discretion.[10] Given the evidence, both testimonial and documentary contained in the record, we find no abuse in the findings that camp expenses and private school tuition are extraordinary expenses that should be added to the basic child support.
In the final assignment of error, Mr. Ficarra asserts the trial court erred in failing to consider the expense sharing benefit enjoyed by Ms. Westbrook because of living in her parents’ home during the time period in question. There is evidence in the record to show that Ms. West-brook’s expenses for her and her child were $2,450 and $1,085, respectively. Ms. Westbrook testified that the deficit was made up every month by family and friends. Specifically, Ms. Westbrook testified that she owed her parents $50,000 that she was paying back on a monthly basis.
La. R.S. 9:315(C)(5)(e) provides:
The court may also consider as in■come the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party’s actual expenses.[11]
(Emphasis added.)
112The language of the statute is permissive, not mandatory. It is within the trial court’s discretion to include or disallow alleged expense-sharing benefits when determining adjusted gross income for child support purposes.[12]
Given the facts of this matter, we find no abuse of the trial court’s discretion on this issue. Accordingly, we find no merit in any errors assigned by Mr. Ficarra.

ANSWER TO APPEAL

The trial court set forth the basis for its calculations in the Reasons for Judgment as follows:
Given the income of the parties, Mr. Ficarra is responsible for 84% of the monthly child support obligation, i.e.[,] $1,109.00/month. The new obligation is an increase of $559.00 compared to Mr. Ficarra’s prior obligation of $550.00. Mr. Ficarra is due a credit for payments made in addition to Social Security [B]enefits received in the amount of $550.00/month for 7.5 months....
Based on the above, the trial court determined that Mr. Ficarra owed Ms. West-brook a total of $15,719.50. That amount was made executory and Mr. Ficarra was *557 ordered to pay interest from date of judgment until paid.
Ms. Westbrook has answered the appeal seeking a change in the calculation of interest on the amount made executory by the judgment. She argues the trial court should have awarded interest on the increased amount of each monthly child support payment due from the date the increased amount of monthly child support payment accrued. We disagree.
When, after a contradictory hearing, a court finds a payment of support under a judgment is in arrears it is required to determine the amount due and render judgment.[13] When the object of the performance is a sum of money, damages for | isdelay in performance are measured by the interest on that sum from the time it is due.[14]
In the matter before us, the court did not find Mr. Ficarra owed a payment of child support under a judgment that was in arrears. Mr. Ficárra was only ordered to pay the additional child support as of the date of judgment. While the payment covered additional child support for a period in the past, it was not in arrears as envisioned by the law. The payment to Ms. Westbrook did not become due until the judgment under review herein was rendered. Accordingly, we find no error in the award of interest made by the trial court.
Because we find no error in the trial court’s ruling, we affirm the judgment as rendered.

AFFIRMED

. It is unclear from this designated record why that motion was not heard.

. It appears from the arguments of counsel that the Social Security benefits for Mr. Ficar-ra and his minor son began on July 1, 2004.

. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).

. Stobart v. State, DOTD, 617 So.2d 880, 883 (La.1993).

. Carmouche v. Carmouche, 03-1106 (La.App. 5 Cir. 2/23/04), 869 So.2d 224.

. The Articles of Incorporation show that it was actually Ms. Westbrook who incorporated the company; not Mr. Ficarra’s daughter.

. McKinnis v. Reine, 10-753 (La.App. 5 Cir. 4/26/11), 65 So.3d 688, 692-93 (citations omitted).

.This statute was amended in 2001, removing the language requiring that a "particular educational need” to attend the special or private school be shown. The statute, as amended, is less restrictive to encompass generally "the needs of the child.” However, we find even under the old standard the particular educational need was established herein by the medical evidence presented.

. State Dep’t of Social Serv. ex rel. K.L. v. Lesky, 07-599 (La.App. 5 Cir. 12/27/07), 975 So.2d 657.

. The version of this statute in force in 2001 was amended by Acts 2001, No. 1082, § 1; however, only the numbering and not the substance of the pertinent part was changed.

. Kern v. Kern, 00-1126 (La.App. 4 Cir. 4/25/01), 786 So.2d 193, 198.

. Aupied v. Aupied, 09-636 (La.App. 5 Cir. 3/9/10), 38 So.3d 899.

. La. C.C. art. 2000.