ROBERT A. CHAISSON, Judge.
|2In this domestic matter, defendant/appellant, Otto Robinson, appeals the portion 'of the trial court judgment of September 5, 2014, which ordered him to pay his pro rata share of private school tuition, registration, and any other mandatory school related expenses. Plaintiff/appellee, Brooke Thomas, has answered the appeal seeking damages in the form of attorney fees incurred by her as a result of this frivolous appeal. For the reasons that follow, we find no error in the trial court ruling. We further deny Ms. Thomas’s request for damages for a frivolous appeal.

FACTS AND PROCEDURAL HISTORY

Brooke Thomas and Otto Robinson have never been married but are the biological parents of a female child bom on March 28, 2007. By way of a consent judgment signed on May 16,2008, the parties agreed that Ms. Thomas shall have sole custody of the minor child and that Mr. Robinson shall have visitation with the minor child every Sunday from 8:00 a.m. until 6:00 p.m. and that he shall pick up the minor child from daycare one day per week. On August.25, 2008, the parties ^entered into another consent judgment regarding child *700 support. In that judgment, the parties agreed that Mr. Robinson would pay child support in the amount of $644.28 per month. In addition, they agreed that Mr. Robinson would pay 59% and Ms. Thomas would pay 41% of all extraordinary, uncovered medical expenses and that Mr. Robinson would pay 51% and Ms. Thomas would pay 49% of health insurance premiums for the minor child.
On February 26, 2014, Ms. Thomas filed a rule to increase child support requesting, in part, that the child support computation be amended to include private school tuition, fees, and expenses. The parties thereafter attended a conference before a domestic hearing officer to address this rule as well as several other rules filed by both parties. As a result of this conference, the hearing officer determined that these parties cannot afford to send their minor child to Sacred Heart Academy, noting that it is one of the most expensive schools in the metro area. In addition, the hearing officer recommended that child support be increased to $708.00 per month.
The parties objected to various recommendations of the hearing officer, and the district court conducted a hearing on these objections on August 8, 2014. Thereafter, on September 5, 2014, the district court issued a judgment that ordered, in pertinent part, that Mr. Robinson pay his pro rata share of the Sacred Heart Academy tuition, registration, and any other mandatory school related expensds. From this portion of the September 5, 2014 judgment, Mr. Robinson now appeals. He contends that the factual conclusions and resulting judgment ordering the child to remain at Sacred Heart Academy and ordering him to pay his pro rata share of tuition and expenses amounted to manifest error. In addition, he argues that the trial court erred in failing to consider the income and expenses- of the parties and |4their ability to pay for the private school tuition of the minor child. We find no merit to Mr. Robinson’s arguments on appeal.

DISCUSSION

We will first address Mr. Robinson’s contention that the trial court was manifestly erroneous and abused its discretion in holding that it was in the best interest of the minor child to attend Sacred Heart Academy, a private school,- and in thereafter ordering Mr. Robinson to pay his pro rata share of tuition, registration, and any other mandatory school- related expenses as part of his child support obligation. Mr. Robinson contends that the parties never agreed to send the child to Sacred Heart Academy, but rather it was a unilateral decision on the part of Ms. Thomas. He points out that other than Ms. Thomas’s self-serving testimony, there was no' evidence or other testimony to show that the parties agreed to send the minor child to Sacred Heart Academy or that it was in the best interest of the minor child to remain at Sacred Heart Academy.
La. R.S. 9:315.6 provides for the inclusion of expenses for private school attendance as an addition to the basic child support obligation. That statute reads, in pertinent part, as follows:
By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may. be added to the basic child support obligation: , .
(1) Expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child.
According to the comments to this statute, “The needs of the child met by the special or private school need not be particular educational needs, but may include such needs of the child as the need for *701 stability or continuity in the child’s educational program.” State Department of Social Services ex rel. K.L. v. Lesley, 07-599 (La.App. 5 Cir. 12/27/07), 975 So.2d 657, 659.
lfiBoth parents testified at the hearing on the objections to the hearing officer’s recommendations. Ms. Thomas testified that her daughter is currently in second grade at Sacred Heart Academy and has been a student there since preschool. Ms. Thomas originally had her daughter in a three-year-old program in a Catholic school on the westbank where she lived. However, as Mr. Robinson lived in St. Bernard Parish, they started looking at schools in New Orleans since that location would be, in between both of their homes. According to Ms.' Thomas, she visited multiple schools in New Orleans and the eastbank of Jefferson Parish. She thereafter informed Mr. Robinson that her top choices were Sacred Heart Academy and Ursuline. Ms. Thomas testified that Mr. Robinson picked Sacred Heart Academy because it was closer to him, specifically noting that he was “the deciding factor as to why we picked Sacred Heart over Ursuline.” Ms. Thomas testified that they also came to an, agreement with respect to the payment of the tuition and fees. They discussed the tuition and fees of both schools, and. Mr. Robinson agreed to pay his portion of whatever school was decided on. Despite this agreement, Ms. Thomas testified that she, in fact, has been paying the tuition and fees since preschool. According .to Ms. Thomas, another reason they chose Sacred Heart Academy was because the school offered financial aid. She had applied for and received grants for Sacred Heart Academy, which made the tuition almost the same as that of Ursuline.
Ms. Thomas further testified about some of her daughter’s problems and how the school helped her' in dealing with them. In particular, Ms. Thomas testified that her brother was killed in 2010, and subsequent to that incident, her daughter started acting out at school, talking about death, and talking in a “baby voice.” After consulting with the guidance counselor at Sacred Heart Academy, Ms. Thomas brought her to see a child psychologist, Dr. Patricia Blackwell, and |fialso a speech pathologist. According to Ms. Thomas, Sacred Heart Academy was very accommodating and even .moved her daughter’s schedule around ;so the speech pathologist could meet with., her at school - during school hours. When her daughter was still having problems, Ms. Thomas went to see a psychiatrist, Dr. Jason Wuttke, who put her on medication for ADHD. Once the minor child was put on this medication, Ms. Thomas asked the school to give weekly reports in order to monitor her daughter’s progress. ■ Ms. Thomas maintained that Sacred Heart Academy- has met her daughter’s needs and has been very supportive in making sure her child has gotten the treatment that she needs.
In addition to this testimony, Ms. Thomas’s attorney also introduced the child’s psychoéducational evaluation as well as letters from both Dr. Blackwell and Dr. Wuttke. In her letter, Dr. Blackwell indicated that as a result of the child’s treatment, she is now- thriving at school, both academically and socially. Further, the child is happy at school; has worked hard to succeed, and is- now doing very well at Sacred Heart Academy. Dr. Blackwell concluded that the school “is a source of emotional stability and mastery for her and it would be unfortunate if she was not allowed to remain at her beloved school with friends and teachers she has forged a bond with.” In another letter from Dr. Blackwell, she indicated that this minor child “is fortunate to attend a proactive school that worked with her and with mental health professionals that have identified *702 her strengths and weaknesses,” and further noted that with such intervention, the child “is on track for an excellent educational future.” In addition, Dr. Wuttke’s letter reflects that as a result of her ongoing treatment for ADHD, the child has made considerable progress at school academically, behaviorally, and socially.
In contrast to Ms. Thomas’s testimony, Mr. Robinson testified that he never agreed to send his daughter to Sacred Heart Academy. Further, he maintained that |7he could not afford the tuition and never agreed to pay a portion of it. During his testimony, he asserted that his daughter does not have ADHD and that she “got that because she is in that school.” Mr. Robinson claimed that his daughter was never on any medication until a year after she was at Sacred Heart Academy. He testified that his daughter could not keep up with the school work and that she then was sent to a therapist, who recommended that she get on ADHD medication. Further, Mr. Robinson testified that one of the therapists told them that their daughter does not belong at Sacred Heart Academy and that they need to keep an open mind about switching schools.
After considering the evidence presented, the trial court determined that it was in the best interest of the minor child to remain at Sacred Heart Academy and ordered Mr. Robinson to pay his pro rata share of tuition, registration, and other mandatory school related expenses. In its reasons for judgment, the trial court explained as follows:
Ms. Thomas requests that Mr. Robinson pay a pro-rata share of the Sacred Heart Academy private school tuition, registration, and other mandatory expenses pursuant to La. R.S. 9:315.6(1). The testimony establishes that the child is at Sacred Heart Academy because Mr. Robinson chose Sacred Heart. Ms. Thomas accommodated Mr. Robinson by allowing him to choose Sacred Heart because it was closer to where he would be living at the time. Furthermore, the evidence shows that [the child] is thriving academically and socially at Sacred Heart. Her treating psychologist, Dr. Patricia Blackwell, stated that Sacred Heart is a ‘source of emotional stability and mastery’ for [the child] and that it would be ‘unfortunate if she was not allowed to remain at her beloved school with friends and teachers she has forged a bond with.’ (Plaintiffs Exhibit 4).
A trial court’s determination of whether to include private school tuition in a basic child support obligation will not be disturbed absent an abuse of discretion. Ficarra v. Ficarra, 11-569 (La.App. 5 Cir. 2/14/12), 88 So.3d 548, 556. We find no abuse of the trial court’s discretion on this issue. The trial court was basically | sfaced with contradictory testimony from the witnesses and had to make a credibility determination. Generally, the standard of appellate review of factual findings in a civil action is a two-part test: 1) the appellate court must find from the record that there is a reasonable factual basis in the record for the finding of the trial court; and 2) the appellate court must further determine the record establishes that the finding is not manifestly erroneous or clearly wrong. Hall v. Hall, 11-60 (La.App. 5 Cir. 5/24/11), 67 So.3d 635, 638, writ denied, 11-1752 (La.10/14/11), 74 So.3d 214. Factual findings should not be reversed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Consequently, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous. Stobart v. State through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993).
Upon thorough review of the record, we find no manifest error in the trial court’s *703 determination that it was in the best interest of the minor child to remain at Sacred Heart Academy and that Mr. Robinson had to pay his pro rata share of the tuition, registration, and any other mandatory school related expenses.
On appeal, Mr. Robinson also contends that the trial court was manifestly erroneous and abused its discretion in failing to consider the income and expenses of the parties and their ability to pay for the private school tuition and argues that the case should be remanded for a full eviden-tiary hearing.
During Mr. Robinson’s cross-examination of Ms. Thomas, he asked her the cost of Sacred Heart Academy tuition. After looking at the charts she prepared with regard to the amount of tuition, Ms. Thomas testified that the cost of tuition for first grade was $13,650.00, and the cost of tuition for second grade was $14,150.00, without taking into account the amount of financial aid given. Mr. Robinson then inquired as to how she is able to pay this tuition with the amount of l9money. she makes. To this question, Ms. Thomas replied that any money that he gives her goes straight to tuition. Mr. Robinson continued by asking Ms. Thomas how much money she makes per year, to which she responded “over $30,000.00.” After this question, Ms. Thomas’s attorney objected on the basis the amount of child support had not been objected to and was not at issue. Thereafter, during Mr. Robinson’s testimony, he claimed that he never agreed to pay tuition for Sacred Heart Academy and that he could not afford to pay it.
Other than this testimony, there was no further evidence introduced about the parties’ ability to afford the Sacred Heart Academy tuition. Mr. Robinson, as the party claiming the inability to pay, was afforded the opportunity to present his case. There is no indication in the record that he was denied the opportunity to offer evidence about his inability to pay at the hearing. The fact that he chose not to do so does not now entitle him to a remand to put on evidence of his inability to pay.
Moreover, as noted by Ms. Thomas in her appellate brief, the basic computation of child support was not at issue so as to call into question the incomes and expenses of the parties. The hearing officer made the child support computation in the interim judgment of May 7, 2014, and neither party objected to this computation. Therefore, there was no reason for the trial court to conduct a full hearing on this issue.

ANSWER TO APPEAL

Ms. Thomas filed an answer to this appeal on February 12, 2015, seeking damages for a frivolous appeal. In requesting attorney fees incurred as a result of this appeal, Ms. Thomas specifically contends that this appeal “presents no genuine issues for review, and this litigation has been prolonged by the delay attributable to this frivolous appeal.”
linRule 2-19 of the Uniform Rules-Courts of Appeal provides: “The court may award damages for frivolous appeal in civil cases as provided by law.” Damages for a frivolous appeal are awarded pursuant to La. C.C.P. art. 2164 which states:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit; as in its judgment may be considered equitable.
This provision is penal in nature and is to be strictly construed. ConstructionSouth, Inc. v. Jenkins, 12-63 (La.App. 5 Cir. 6/28/12), 97 So.3d 515, 522, writ *704 denied, 12-1756 (La.11/2/12), 99 So.3d 676. Damages for frivolous appeals, like sanctions at the trial court level, are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party, or those that have no reasonable basis in fact of law. An appeal will not be deemed frivolous unless it is taken solely for delay, fails to raise a serious legal question, or counsel does not seriously believe ;in the proposition of law he, is advancing. Appeals are favored and appellate courts are reluctant to impose damages for frivolous appeals. Treme v. Adams, 10-554 (La.App. 5 Cir. 1/11/11), 59 So.3d 1278. Our review of the, record does not show that this appeal was taken solely for delay or that Mr. Robinson did not seriously believe that he was entitled to relief. Thus, an award of damages to Ms. Thomas for a frivolous appeal is not warranted.
Accordingly, for the reasons set forth herein, we affirm the judgment of the trial court that ordered Mr. Robinson to pay his pro rata share of private school tuition, registration, and any other mandatory school related expenses. Further, we deny Ms. Thomas’s request for damages for a frivolous appeal.

AFFIRMED