GUIDRY, J.
Defendant, Timothy Schmidt, appeals from a judgment of the trial court finding him guilty of contempt of court and ordering him to pay $110,758.38, representing his pro rata share of medical expenses found by the court to be medically necessary for the parties' minor child and which were not covered by insurance, $15,000.00 in attorney's fees, and $2,470.50 in costs. For the reasons that follow, we amend in part and as amended, affirm in part and reverse in part.
FACTS AND PROCEDURAL HISTORY
Timothy and Christy Schmidt were married on February 3, 1996, and one child was born of the marriage on February 7, 2003. Thereafter, Christy filed a petition for divorce on November 4, 2004. On March 1, 2005, the trial court signed a judgment, stipulated to by the parties, regarding custody and support. In particular, the judgment provided:
each party shall be responsible for his or her pro rata share of any medical expenses paid by such party and not covered by insurance. The pro rata share of each party is as follows: Christy Jenkins Schmidt-22%; Timothy Schmidt-78%. Each party shall submit proof of payment of medical expenses not covered by insurance to the other party within 60 days of payment and request reimbursement from the non-payor for the non-payor's pro rata share. The other party shall reimburse the payor his or her pro rata share of such expenses within 30 days thereafter. If either party does not submit proof of medical expenses paid and not covered by insurance within the 60 days of payment, then such party will not be entitled to claim reimbursement for such expense.
A judgment of divorce was entered on June 13, 2005.[1]
Thereafter, on August 26, 2005, Christy filed a rule to show cause, claiming the March 1, 2005 judgment ordered Timothy to pay his 78% pro rata share of any medical expenses not covered by insurance within thirty days of request by her, that she had timely submitted proof of payment of these medical expenses, and that Timothy had continuously failed and refused to timely or fully reimburse her for his share of the medical expenses paid by her. Christy requested that the trial court order Timothy to show cause as to why he should not be held in contempt of court for *807 failing and refusing to reimburse her his pro rata share of medical expenses paid by her; why he should not be ordered to reimburse her his pro rata share of medical expenses previously submitted by her immediately and without delay; and why he should not be ordered to reimburse her his pro rata share of medical expenses for therapy and treatment that are recurring and ongoing within five days of notification by her of the amount invoiced for such therapy.
At a September 27, 2005 hearing, the parties stipulated that Timothy was not required to reimburse Christy his pro rata share of $1,500.00 advanced by her to Mississippi Behavioral Clinic for additional therapy for the child, with the parties reserving the right to have determined if such additional therapy is a medical necessity. This stipulation was reduced to judgment; however the judgment was never signed. The unsigned judgment was filed into the trial record on March 20, 2007, and also provided that Timothy shall place a credit card with Abilities for Speech and Language (Abilities) for payment of treatment for the minor child.[2]
On March 13, 2008, Christy filed a rule to show cause, seeking an increase in child support and contempt for Timothy's failure to reimburse her his pro rata share of medical expenses not covered by insurance. Particularly, Christy asserted that because of the child's medical conditions, there are extraordinary expenses that should be taken into consideration in establishing child support, including but not limited to: cost of special dietary requirements; cost of prescribed over-the-counter medications that are not covered by health insurance; cost of specific air purifiers, feeding utensils and equipment for feeding environment; specialized bedding; special paraphernalia required by treating physicians and therapists that are not covered by health insurance; and educational expenses to assimilate the child into a school setting. Furthermore, Christy asserted that Timothy had refused to reimburse her his pro rata share of medical expenses not covered by insurance within thirty days of submission by her. Christy asserted that she had repeatedly provided Timothy with proof that the child's physicians and therapists had prescribed or ordered medications, equipment, special foods, feeding utensils, food preparation tools, therapy tools, etc., which are medically necessary and are not covered by insurance. Christy further asserted that Timothy had been provided with reports from the child's medical caregivers substantiating the medical necessity of the foregoing, but that he has still failed or refused to reimburse Christy for his pro rata share. The matter passed without date, and on May 7, 2008, the trial court signed an order appointing a parenting coordinator to assist the parties in resolving disputes and in reaching agreements regarding the minor child.
Thereafter, on February 10, 2009, Christy filed a motion to modify custody and other ancillary matters, including a rule for contempt regarding Timothy's removal of his credit card from Abilities and failure to pay Abilities after June 24, 2008. The trial court held a hearing on all pending matters on March 24, 2009,[3] wherein the trial judge told Timothy to bring Abilities *808 up to date and further stated that Christy needed either depositions from doctors or she needed the doctors to testify regarding the medical necessity of the requested expenses.
Timothy subsequently filed a petition to modify custody on January 20, 2015. Christy responded by filing an answer and reconventional demand on March 10, 2015, seeking an increase in child support, tuition, and extracurricular expenses due to Timothy's increase in income and an increase in the educational and medical expenses of the child. The parties entered into a consent judgment on July 27, 2015, wherein Timothy agreed to pay 50% of the minor child's school tuition commencing with the 2015 fall semester and 50% of any mutually agreed upon extracurricular activities, including trumpet lessons. The parties reaffirmed that Timothy is responsible for 78% of any medical expenses not covered by insurance and further provided that both parties "reserve the right to seek a judicial determination of any issue not addressed in this judgment."
On December 7, 2015, Christy filed a rule for contempt, stating pursuant to the March 1, 2005 stipulated judgment, Timothy was ordered to pay 78% of medical expenses not covered by insurance and that since the judgment was rendered, Timothy has failed and/or refused to reimburse her for his pro rata share of medical expenses incurred on behalf of the minor child in the amount of $184,970.68. Christy attached a spreadsheet of expenses to her rule for contempt. Christy also sought attorney's fees and costs. Following a January 5, 2016 status conference, the trial court signed an order, ordering that Christy's rule for contempt, attorney's fees and other ancillary matters shall be set for trial with the court to determine which claims for reimbursement shall be deemed a medical necessity for the minor child.
Following a three day trial on Christy's rule, the trial court issued a judgment finding Timothy guilty of contempt of court for willfully violating the provisions of the stipulated judgment agreed to by the parties on January 12, 2005 and signed by the court on March 1, 2005, namely that "each party shall be responsible for his or her pro rata share of any medical expenses paid by such party and not covered by insurance." The judgment further ordered that Timothy shall pay Christy the sum of $59,099.02, representing Timothy's pro rata share of the medical expenses incurred by Christy, which the trial court found to be medically necessary for the parties' minor child.
Christy subsequently filed a motion to amend judgment or in the alternative, motion for new trial, asserting that certain medical expenses, which were clearly granted by the trial court, were not included in the judgment. The motion was submitted on briefs only. Thereafter, on August 14, 2017, the trial court signed a judgment finding the May 8, 2017 judgment to be contrary to the law and evidence and granting Christy's motion for new trial only as to the missing expenses. The trial court further found that Timothy was in contempt of court for willfully violating the provisions of the stipulated judgment agreed to by the parties on January 12, 2005 and signed by the court on March 1, 2005, and ordered Timothy to pay the sum of $110,758.38, representing Timothy's pro rata share of the medical expenses incurred by Christy, which the court, considering all expenses entered into evidence, found to be medically necessary for the parties' minor child. The trial court also ordered Timothy to pay $15,000.00 in attorney's fees and $2,470.50 in court costs and fees.
Timothy now appeals from the trial court's August 14, 2017 judgment.
*809 DISCUSSION
A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court is constructive contempt of court. See La. C.C.P. art. 224. Proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. Estate of Graham v. Levy, 636 So.2d 287, 290 (La. App. 1st Cir. 1994), writ denied, 94-1202 (La. 7/1/94), 639 So.2d 1167. The decision to hold a party in contempt of court for disobeying the court's orders is within the trial court's great discretion. Only if the appellate court finds an abuse of that discretion will a trial court's contempt ruling be reversed. Leger v. Leger, 00-0505, p. 3 (La. App. 1st Cir. 5/11/01), 808 So.2d 632, 635. However, the predicate factual determinations underlying the finding of civil contempt of court are reviewed under the manifest error standard of review. See Rogers v. Dickens, 06-0898, p. 7 (La. App. 1st Cir. 2/9/07), 959 So.2d 940, 945 ; see also Mitchell v. Risher, 11-1008 (La. App. 1st Cir. 12/21/11), 2011 WL 6780131 (unpublished opinion).
A proceeding for contempt for refusing to obey a court's order is not designed for the benefit of the litigant, though infliction of punishment may inure to the benefit of the mover in the rule. Welborne v. Welborne, 29,479, p. 10 (La. App. 2nd Cir. 5/7/97), 694 So.2d 578, 585, writs denied, 97-1800 (La. 10/13/97), 703 So.2d 621 and 97-1850 (La. 10/13/97), 703 So.2d 623. Rather, the object of a contempt proceeding is the vindication of the dignity of the court. Short v. Short, 12-312, p. 5 (La. App. 5th Cir. 11/13/12), 105 So.3d 892, 895. In order to find a party guilty of constructive contempt, the trial court must find that he or she violated the order of the court intentionally, knowingly, and purposely, without justification. Smith v. Pillow-Smith, 10-0167, p. 4 (La. App. 4th Cir. 11/17/10), 52 So.3d 264, 267-68.
The March 1, 2005 judgment provided, in pertinent part:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each party shall be responsible for his or her pro rata share of any medical expenses paid by such party and not covered by insurance. The pro rata share of each party is as follows: Christy Jenkins Schmidt-22%; Timothy W. Schmidt-78%. Each party shall submit proof of payment of medical expenses not covered by insurance to the other party within 60 days of payment and request reimbursement from the non-payor for the non-payor's pro rata share. The other party shall reimburse the payor his or her pro rata share of such expenses within 30 days thereafter. If either party does not submit proof of medical expenses paid and not covered by insurance within 60 days of payment, then such party will not be entitled to claim reimbursement for such expense.
Timothy asserts on appeal that the trial court abused its discretion in finding him in contempt of court for failing to pay his pro rata share of various expenses, including therapy with Abilities; Applied Behavioral Analysis (ABA), including therapy, use of shadows, and summer programs; daycare; private school tuition; food; and trumpet lessons. Timothy contends that these costs are not medical expenses, that he was never ordered by the court to pay these costs, and that the sole issue before the court was a rule tor contempt and not a hearing to determine *810 medical necessity.[4]
With regard to Timothy's argument that the sole issue before the court was a rule for contempt, we note that following a January 5, 2016 status conference, the trial court signed an order, ordering that Christy's rule for contempt, attorney's fees, and other ancillary matters shall be set for trial with the court to determine which claims for reimbursement shall be deemed a medical necessity for the minor child. Clearly, in order to determine if Timothy was in contempt of court for failing to pay his pro rata share of 78% of medical expenses not covered by insurance, it must first be determined if the claimed expenses for which Christy sought reimbursement from Timothy are medical expenses as contemplated by the judgment.[5] Furthermore, Timothy did not raise any objection either at the status conference or at trial to consideration of this issue. Therefore, we find that the issue of whether the expenses for which Christy sought reimbursement from Timothy, and which Timothy refused to pay, are medically necessary was properly before the trial court, and Timothy's argument in this regard is without merit.
Accordingly, we now address each of the expenses that Timothy claims the trial court erred in finding were medically necessary, and as such were medical expenses not covered by insurance pursuant to the March 1, 2005 judgment for which he owed Christy reimbursement of his pro rata share of 78%, and abused its discretion in finding him guilty of contempt of court for failing to pay.
Abilities
Abilities consists of speech and occupational therapy for the minor child, who has autism. The medical records admitted into evidence show that Dr. Charlotte Hollman, the child's pediatric neurologist, diagnosed the minor child with autism in April 2005 and recommended speech therapy at least three times a week and occupational therapy four times a week. At trial, Timothy admitted that he had paid Abilities until June 24, 2008, when he withdrew his credit card information from Abilities. According to Timothy, he stopped paying for Abilities because he could no longer afford it, and he had to make a choice between continuing the therapy program that the child had been in for three years or getting to spend more time with his son. Furthermore, Timothy stated that the judgment ordering him to place a credit card on file with Abilities was never signed.
However, Timothy did not contest that Abilities was a medical expense not covered by insurance and did not dispute that at the 2009 hearing, where his contempt for failing to pay Abilities was one of the issues before the court, the trial court ordered him to bring Abilities up to date.
*811 Additionally, Timothy admitted that Christy had sent him monthly accounting spreadsheets for Abilities between July 2008 and September 2010, that he had refused to pay his pro rata share, and that he owed Christy $11,000 or $12,000 for the Abilities program.
Accordingly, based on the foregoing, we find no error in the trial court's finding that Abilities was medically necessary and in ordering Timothy to pay his pro rata share of $11,385.77, representing 78% of the total cost for Abilities in the amount of $14,597.14. Furthermore, because Timothy did not contest that Abilities was a medical expense not covered by insurance, acknowledged that he owed Christy for the minor child's therapy with Abilities, and was aware of the trial court's subsequent order following his withdrawal of his credit card from Abilities to make Abilities current, we find no error in the trial court's finding that Timothy willfully disobeyed the trial court's March 1, 2005 judgment ordering him to pay his pro rata share of medical expenses not covered by insurance and furthermore, find no abuse of the trial court's discretion in finding Timothy guilty of contempt of court.
ABA
According to the record, ABA is recognized as a treatment for autism in young children and involves one-on-one intervention and teaching. The medical records and deposition testimony of Dr. Charlotte Hollman admitted at trial indicate that in April 2005, she recommended that the minor child participate in an ABA approved therapy program. According to Dr. Hollman, ABA is the most clearly recognized and most effective treatment for autism in young children. Dr. Hollman further stated that it was medically necessary for Christy to begin the child on a course of ABA treatment in order to assist the child in his development. According to Dr. Hollman's medical records from July 25, 2005, she strongly recommended that the child receive 30-40 hours a week in an ABA approved program due to the child's hypotomia (low muscle tone), sensory issues, and delay in language development. Furthermore, when the child approached school age, Dr. Hollman stated that shadows are customary, standard treatment for a child who had been receiving as much ABA therapy as this minor child had. Dr. Hollman stated that a shadow provides therapy in the school setting and was medically necessary.
From our review of the record, we find no manifest error in the trial court's factual determination that the ABA treatment recommended by Dr. Hollman to treat the minor child's medical condition of autism, including the use of shadows, was medically necessary, and as such, is a medical expense for purposes of the March 1, 2005 judgment.[6]
However, as detailed above, the March 1, 2005 judgment provides that in order for a party to be entitled to claim reimbursement for such an expense, the party must submit proof of payment and request reimbursement from the non-payor for the non-payor's pro rata share within sixty days of payment of the medical expense. In the instant case, the parties do not dispute that Christy sent Timothy a bill for the initial $1,500.00 consultation fee with the TCLC/Mississippi Behavioral Clinic, the *812 ABA consultant, within sixty days of payment. Christy also stated that when the child attended preschool, she separated out the shadow expenses from his other ABA expenses and forwarded Timothy proof of payment of those shadow expenses, for which Timothy acknowledged receipt.
However, according to Christy's trial testimony, other than these reimbursement requests, she did not forward any more bills for ABA to Timothy. Christy stated that she did so pursuant to direction from the preceding trial court judge, who told her at the September 27, 2005 hearing to hold all ABA bills until a determination was made regarding medical necessity. However, there is no support in the record, either by way of minute entry, order, judgment, or trial transcript, to support Christy's contention that she was relieved from complying with the requirements of the March 1, 2005 judgment. Furthermore, Timothy testified that he had not received anything from Christy regarding ABA expenses, other than the initial $1,500.00 consultation fee and the aforementioned preschool shadowing expenses.
Accordingly, other than the initial $1,500.00 consultation fee and expenses for preschool shadowing, the record does not support that Christy submitted proof of payment of ABA related medical expenses and requested reimbursement of said expenses from Timothy of his pro rata share of those expenses within sixty days of payment.[7] Therefore, the trial court erred in finding that she was entitled to reimbursement from Timothy for his pro rata share of ABA expenses other than the initial $1,500.00 consultation fee and preschool shadowing expenses in the amount of $9,645.01.[8] As such, we find Christy is entitled to $1,170.00, representing 78% of the consultation fee, and $7,523.11, representing 78% of the preschool shadowing expenses.
However, while Christy may be entitled to reimbursement for these specific ABA expenses, we find that the trial court abused its discretion in finding Timothy guilty of contempt of court for his failure to pay these expenses. As acknowledged by the parties, the unsigned, stipulated judgment filed into the record following the September 27, 2005 hearing states:
IT IS ORDERED, ADJUDGED AND DECREED that Timothy is not required to reimburse Christy his prorata [sic] share of the $1500.00 advanced by Christy to Mississippi Behavioral Clinic for additional therapy for [the minor child], the parties reserving the right to have determined if such therapy is a medical necessity.
*813 The parties do not dispute that while this judgment is unsigned, it was the order of the court pursuant to their stipulation. Accordingly, the trial court erred in finding that Timothy willfully disobeyed the March 1, 2005 judgment by failing to pay the $1,500.00 consultation fee and preschool shadowing costs, when the parties agreed and the court ordered, approximately six months after entry of the March 1, 2005 judgment, that Timothy was not required to pay these expenses until the parties sought determination from the trial court that this therapy was a medical necessity. Therefore, the trial court erred in finding that Timothy willfully disobeyed the trial court's March 1, 2005 judgment and as such, abused its discretion in finding Timothy guilty of contempt of court as to these ABA expenses.
In addition to the foregoing ABA expenses, Christy also claimed reimbursement for expenses related to summer enrichment programs and a summer program with Behavioral Intervention Group (BIG). The minor child attended these programs in 2012, 2013, and 2014. The record does not contain any evidence regarding the summer enrichment programs other than Christy's testimony regarding the BIG program, which was attended by the minor child in the summer of 2014. Christy stated that the BIG program is the ABA program, as it is run by the same people who work for TCLC/Mississippi Behavioral Institute. Christy stated that the program was recommended for socialization by the school the minor child was attending, and she believed Dr. Hollman concurred. However, Dr. Hollman did not mention the BIG program or its medical necessity in her deposition testimony. Therefore, because the evidence in the record demonstrates that the BIG program was recommended by the minor child's school for socialization, and not by a physician for medical reasons, we find that the trial court erred in finding that the BIG summer program was medically necessary and likewise abused its discretion in finding Timothy guilty of contempt of court for failing to reimburse Christy his pro rata share of these expenses.
Preschool Tuition
The minor child attended preschool at University Presbyterian and/or Broadmoor Presbyterian from February 2007 to May 2009. According to Christy's testimony, she worked part time during that period and the minor child attended preschool for two hours a day. Christy stated that the minor child's treating physicians were in agreement that due to the minor child's autism, he needed to be enrolled in a preschool program so that he could start learning to interact with other children and to facilitate, with the use of shadows, his transition to kindergarten. However, this statement is not only uncorroborated by any medical testimony or evidence in the record, there is no medical evidence in the record that it was medically necessary for the minor child to be enrolled in a preschool program.[9]
Furthermore, preschool tuition is properly characterized as child care costs under La. R.S. 9:315.3 or, given the particular facts of this case, an extraordinary expense under La. R.S. 9:315.6(3), as an expense intended to enhance the "health...social, or cultural development of a child." Both of these types of expenses are added to the basic child support obligation. See La. R.S. 9:315.3(A) and 9:315.6(3).[10]
*814 Therefore, based on our review of the applicable law and evidence in the record, we find that the trial court was manifestly erroneous in finding that preschool tuition was a medical expense for purposes of the March 1, 2005 judgment and abused its discretion in finding Timothy guilty of contempt of court for failing to reimburse Christy his pro rata share of these expenses.
Private School Tuition
After preschool, Christy enrolled the minor child in Country Day School, a private elementary school. Christy stated that due to the minor child's medical conditions, including autism, life-threatening peanut allergy, and digestive/feeding issues, she had a difficult time finding a school that could accommodate all of the minor child's needs. According to Christy, the minor child had to be in a nut-free environment due to his life-threatening allergy to peanuts and also had to be in a school where he could continue using a shadow and receiving ABA therapy.
Private school tuition, however, is addressed in La. R.S. 9:315.6(1), which addresses extraordinary expenses and provides:
By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:
(1) Expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child.
Furthermore, we note that while the justification for addition of private school tuition to the basic child support obligation of a party may be based on medical evidence or medical necessity, it does not transform the expense into a medical expense. See Ficarra v. Ficarra, 11-569 (La. App. 5th Cir. 2/14/12), 88 So.3d 548 (where medical evidence of child's heart condition and diagnosis of attention deficit, hyperactivity disorder supported inclusion of private school tuition in basic child support obligation).[11] Therefore, based on our review of the evidence in the record and applicable law, we find the trial court erred in finding that private school tuition was a medical expense for purposes of the March 1, 2005 judgment and abused its discretion in finding Timothy guilty of contempt of court for failing to reimburse Christy his pro rata share of these expenses.
Whole Foods Expenses
The evidence admitted at trial indicated that the minor child had feeding issues, for which he received treatment with Dr. Meeta Patel. According to Christy, pursuant to the minor child's feeding therapy with Dr. Patel and the doctor's instructions, she purchased an overabundance of food at Whole Foods so that she could prepare food at different textures as part of the minor child's therapy. Christy stated that she forwarded the Whole Foods receipts to Timothy for the *815 times when the minor child was doing feeding therapy with Dr. Patel.
However, from our review of the record, we do not find any medical evidence substantiating Christy's testimony. There is no medical evidence or testimony from Dr. Patel with regard to the feeding therapy or that such therapy required the purchase of food at Whole Foods. As such, absent any medical evidence to support that this expense was medically necessary,[12] we find that the trial court was manifestly erroneous in finding that the expenses for food purchased at Whole Foods were medically necessary and as such, were a medical expense for purposes of the March 1, 2005 judgment and likewise, abused its discretion in finding Timothy guilty of contempt of court for failing to reimburse Christy his pro rata share of these expenses.
Trumpet Lessons
At trial, Christy acknowledged that trumpet lessons for the minor child were not a medical necessity. Rather, Christy stated that Timothy had been ordered to pay for the trumpet lessons, and that was the basis of her contempt rule. However, Christy filed her rule for contempt solely based on the March 1, 2005 judgment wherein Timothy was ordered to pay 78% of medical expenses not covered by insurance. The trumpet lessons were the subject of a July 27, 2015 consent judgment, wherein the trial court ordered Timothy to pay 50% of any mutually agreed upon extracurricular activities, including trumpet lessons.
Therefore, while Timothy had been ordered to pay for his share of the trumpet lessons, contempt for disobeying the July 27, 2015 judgment was not before the court. As such, we find the trial court was manifestly erroneous in finding that trumpet lessons are medically necessary and as such, are a medical expense pursuant to the March 1, 2005 judgment and abused its discretion in finding Timothy guilty of contempt of court for failing to reimburse Christy his pro rata share of these expense.
Dr. Hollman Visit Vitamin Supplements, and Digestive Enzymes
The trial court found that a February 2016 consultation with Dr. Hollman was medically necessary. Timothy does not dispute this finding; rather, he contends that because the expense was not part of the original rule for contempt, occurring after the rule was filed, the trial court abused its discretion in finding him guilty of contempt of court for failing to pay it. We agree. As previously noted, contempt proceedings must be strictly construed. Estate of Graham, 636 So.2d at 290. Therefore, because the February 2016 consultation was not a subject of the rule for contempt filed by Christy on December 7, 2015, we find that the trial court abused its discretion in finding Timothy guilty of contempt of court for failing to reimburse Christy his pro rata share of this expense.
With regard to the vitamin supplements and digestive enzymes, Timothy likewise does not contest the trial court's finding that these expenses were medically necessary, and as such are medical expenses for purposes of the March 1, 2005 judgment. Rather, Timothy contends that he paid these expenses prior to trial, and as such, the trial court abused its discretion in finding him guilty of contempt of court for failing to pay these expenses. From our review of the record, it appears that both *816 parties acknowledge that Timothy paid $625.06 for vitamin supplements and digestive enzymes in December 2015, following Christy's filing of her rule for contempt but prior to trial. However, this payment only represents a portion of the expenses presented by Christy. According to the evidence presented at trial, the total cost of vitamin supplements and digestive enzymes is $1,083.91, and Timothy's pro rata share of this cost is $845.45. Therefore, because Timothy did not pay the entire amount of his pro rata share of these expenses, we find no error in the trial court's finding that Timothy willfully disobeyed the trial court's March 1, 2005 judgment ordering him to pay his pro rata share of medical expenses not covered by insurance and furthermore, find no abuse of the trial court's discretion in finding Timothy guilty of contempt of court for failing to reimburse Christy his pro rata share of these expenses.
However, because Timothy paid Christy $625.06 toward these expenses, we find that the trial court erred in ordering Timothy to pay his pro rata share of the entire amount of these expenses. Rather, Timothy should be ordered to pay $220.39, representing the difference between his pro rata share of the total costs for these expenses and the amount Timothy already paid.
CONCLUSION
For the foregoing reasons, we affirm the portion of the trial court's judgment finding Abilities is medically necessary, ordering Timothy to pay his pro rata share of these expenses in the amount of $11,385.77, and in finding Timothy guilty of contempt of court for willfully violating the provisions of the stipulated judgment agreed to by the parties on January 12, 2005 and signed by the court on March 1, 2005, by failing to pay Abilities. We also affirm the portion of the trial court's judgment finding vitamin supplements and digestive enzymes are medically necessary and finding Timothy guilty of contempt of court for willfully violating the provisions of the stipulated judgment agreed to by the parties on January 12, 2005 and signed by the court on March 1, 2005, by failing to pay these expenses. However, we amend the trial court's judgment to order that Timothy pay $220.39 for these expenses. We further affirm the portion of the trial court's judgment finding ABA therapy and shadows are medically necessary, but limit reimbursement of those costs solely to Timothy's pro rata share of the initial $1,500.00 consultation fee and $9,645.01 in preschool shadowing expense for which Christy timely submitted proof of payment, which pro rata shares amount to $1,170.00 and $7,523.11, respectively. Finally, to the extent we affirm the trial court's judgment finding Timothy guilty of contempt of court for failing to pay his pro rata share of Abilities, vitamin supplements, and digestive enzymes, we likewise affirm the trial court's judgment ordering Timothy to pay Christy $15,000.00 in reasonable attorney's fees and to pay $2,470.50 in court costs.
However, we reverse the trial court's judgment to the extent that it finds Timothy guilty of contempt of court for failing to pay the ABA therapy and preschool shadowing expenses. Furthermore, we reverse the portions of the trial court's judgment finding that the following expenses were medically necessary: preschool expenses at University Presbyterian and Broadmoor Presbyterian; private school tuition at Country Day School; food purchased at Whole Foods; and trumpet lessons. We likewise reverse the trial court's judgment to the extent that it found Timothy guilty of contempt of court as related to these expenses and the post-rule for contempt invoice for Dr. Hollman. All costs *817 of this appeal are assessed equally between the parties.
AMENDED IN PART AND AFFIRMED IN PART AS AMENDED; REVERSED IN PART.

Christy filed a motion to amend and restate the judgment of divorce because the year and location noted in the judgment were incorrect. On December 21, 2005, the trial court signed an amended restated judgment of divorce.

According to the record, the judgment was filed unsigned because the transcript of the hearing was "lost," and counsel for defendant could not verify the court's ruling. However, defense counsel in brief to this court admits that the trial court entered a ruling, as stated in the unsigned judgment, regarding Mississippi Behavioral Clinic and medical necessity.

The court minutes indicate that the hearing was on March 29, 2009; however, the transcript admitted into evidence states that the hearing was on March 24, 2009.

On appeal, Timothy asserts the trial court erred in finding him guilty of constructive contempt of court and in ordering him to pay $15,000.00 in attorney's fees and $2,470.50 in court costs. However, Timothy does not present any argument contesting the amount of attorney's fees and court costs awarded. Therefore, to the extent that his assignment of error raises this issue on appeal, we find that this issue was abandoned by failing to brief it. See Louisiana Commerce & Trade Association, SIF v. Williams, 14-1680, p. 6 (La. App. 1st Cir. 6/5/15), 174 So.3d 696, 699.

We note also that the March 1, 2005 judgment does not include any requirement that a determination of medical necessity must be made by the trial court prior to a party seeking reimbursement from the other party for his or her pro rata share of medical expenses not covered by insurance. However, we do note that with regard to ABA therapy, a subsequent unsigned judgment does contain such a stipulation, as discussed infra.

Timothy contends on appeal that the medical expenses must also be reasonable. Louisiana Revised Statute 9:315(C)(8), in defining "ordinary medical expenses," refers to the reasonableness and necessity of the medical costs. While the March 1, 2005 consent judgment does not place any such restriction on the definition of medical expenses, we nonetheless find, based on our determination infra regarding the expenses reimbursable to Christy, that these expenses are reasonable under the circumstances.

Christy stated at trial that she did meet the sixty-day requirement as to the ABA expenses in process when she issued discovery in 2009. However, the record is devoid of any indication as to when discovery was conducted in 2009 or what was submitted in conjunction with that discovery. Therefore, we cannot substantiate Christy's assertion, nor can we determine the expenses to which she is referring.

Timothy also asserts that Christy abandoned any claims for reimbursement by failing to seek a determination of medical necessity or exercising the reservation of rights granted in the unsigned, stipulated judgment filed following the September 27, 2005 hearing. While we agree that plaintiff waited over eleven years to seek a determination as to the medical necessity of these ABA expenses, we find that Timothy waived any claim of abandonment when he consented to the July 27, 2015 judgment, wherein the parties agreed to "reserve the right to seek a judicial determination of any issue not addressed in this judgment." See Adams v. Adams, 14-0387, p. 5 (La. App. 1st Cir. 3/11/15), 166 So.3d 1066, 1069 (a defendant waives the right to assert abandonment by taking actions inconsistent with the intent to treat the case as abandoned.)

Christy even acknowledged in her testimony that the medical expense portion of the preschool was the shadowing, which this court discussed supra.

Christy even acknowledged in a March 18, 2008 filing seeking an increase in child support that educational expenses to assimilate the child into a school setting are an extraordinary expense. As previously noted, this filing was passed without date, and Christy did not re-urge this issue before the trial court.

We note that in 2015, Christy filed a reconventional demand seeking an increase in child support, tuition, and extracurricular expenses. However, the tuition was related to the minor child's attendance at Runnels, and pursuant to consent judgment, the trial court ordered Timothy to pay, commencing with the 2015 fall semester, fifty percent of the minor child's school tuition.

We note that the record does contain evidence from Dr. James Kidd, III, the child's treating allergy physician, regarding the medical necessity of the minor child eating certain foods from Whole Foods due to his allergies. However, that is not the basis upon which Christy asserted that the Whole Foods purchases were medically necessary.