636 So.2d 287 (1994)
The ESTATE OF Louis B. GRAHAM and Sherryl Paternoster, Wife of/and William F. Huseonica
v.
David P. LEVY, et al.
The ESTATE OF Louis B. GRAHAM, et al.
v.
David P. LEVY, et al.
Nos. 93 CA 0636R, 93 CW 0134.
Court of Appeal of Louisiana, First Circuit.
April 8, 1994.
Writ Denied July 1, 1994.
*288 George D. Fagan, New Orleans, and Marion B. Farmer, Covington, for defendants-appellants.
Adriel G. Arceneaux and James C. Arceneaux, New Orleans, for plaintiffs-appellee.
Before WATKINS, SHORTESS and FOGG, JJ.
WATKINS, Judge.
The primary issue presented herein for our decision is whether or not the trial court erred in sentencing defendant to a jail term for contempt of court. Finding no error in the conclusion that a jail sentence was warranted, we nevertheless find it appropriate to reduce the sentence.
In the mid-nineteen-seventies, defendant David P. Levy, several other individuals, and their company, Balehi Marine, Inc. (Balehi), purchased land on Bayou Lacombe that was *289 subject to restrictive covenants limiting use of the land to residential purposes. The purchase consisted of lot No. 27 and lot No. 29 and a 40-foot right-of-way strip adjacent to lot No. 27. This court upheld the validity of the restrictions in Levy v. Graham, 347 So.2d 1180 (La.App. 1st Cir.1977). In 1978, neighboring landowners obtained a permanent injunction prohibiting Mr. Levy and Balehi from "conducting any activity of any nature whatsoever, other than residential activity" on the two lots; the judgment held defendants in contempt for leaving oil drums and machinery on the lots in violation of previous court orders. On appeal, this court upheld the injunction as to the two lots and extended its coverage to the 40-foot "Clesi" strip. Vinson v. Levy, 372 So.2d 694 (La. App. 1st Cir.), writ denied, 375 So.2d 942 (La.1979).
On April 21, 1992, plaintiffs, Sherryl Paternoster Huseonica, William F. Huseonica, and the estate of Louis Graham, who were neighboring landowners, filed a rule for contempt alleging that Mr. Levy had violated the permanent injunction. By this time, Mr. Levy was the majority stockholder of Balehi.[1] The plaintiffs contended that shipyard activity had encroached onto approximately 417.4 feet of the property subject to the injunction; that defendant's lessee was storing equipment and conducting work on the property; that cranes and derricks were in use on the property; that defendant had buried various materials, dumped sandblast waste and trash, and burned trash on the property; and that sandblasting and noisy commercial activities were carried on often after midnight, "rendering residential living unbearable."
At a hearing on May 14, 1992, the parties agreed on the following stipulations, which were incorporated into a judgment signed June 2, 1992:
a) David Levy was guilty of contempt of court and was sentenced to pay a $500 fine, costs of $1000 and attorneys' fees of $5000;
b) Levy was given 60 days from May 14 to "remove all vestiges of non-residential usage" from the property at issue, in default of which he would be returned to court for imposition of a jail sentence;
c) the property was to be inspected in 60 days by a surveyor, who would report to the court whether or not Levy had complied with the order;
d) the clearing process was to be done without showing "retribution for this action against Mr. Levy's neighbors in the community, including, but not limited to, the removal of trees on the affected property."
On July 9, 1992, another neighbor, Captain Terry Newman, filed an intervention and rule for contempt, alleging that Mr. Levy had threatened to "store some of his equipment on property which he owned directly in front of" Capt. Newman's property if Capt. Newman did not influence the other neighbors to withdraw their complaint; that Mr. Levy had piled large amounts of debris in close proximity to Capt. Newman's property, buried trash on the property subject to the injunction, and moved a building close to Capt. Newman's property for the purpose of storing hazardous materials. Capt. Newman further alleged that Mr. Levy had violated parish zoning ordinances by moving industrial equipment onto the property.
The surveyor who was mentioned in the stipulations inspected the property after 60 days and made his report to the court by letter dated August 4, 1992, with accompanying photographs. He stated that there remained on the property pieces of scrap metal, a large pleasure boat, a shed, a welding machine, an air compressor, a sand tank, and a concrete slab.
On September 9, 1992, plaintiffs filed a motion to enforce the June 2 judgment of contempt. The court held a show cause hearing on November 13, 1992, and sentenced Mr. Levy to serve 90 days in the parish jail, the sentence to be served immediately. The written order was signed on November 16, 1992. The coroner performed an EKG test on Mr. Levy also on November 16, found an irregular heartbeat, and admitted Mr. Levy to the hospital. Mr. Levy filed a *290 motion for reconsideration; the court stayed the incarceration order pending determination of the motion. Mr. Levy was released from the hospital on November 24, 1992. A hearing on the motion for reconsideration was held December 7, and it was denied on December 15, 1992.
Contending that appeal rather than supervisory writ was the appropriate vehicle for relief from the November 16 order, Mr. Levy filed a motion for devolutive appeal on January 25, 1993. On January 28, 1993, he filed an application for supervisory writs. This court denied Mr. Levy's motion to consolidate the writ application with his appeal and also denied the writ. (See 93 CA 0636.) Subsequently, the Louisiana Supreme Court remanded the matter to us for briefing and an opinion 627 So.2d 643, and we consolidated the writ application and the appeal pursuant to the order of remand.
Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court constitutes constructive contempt of court. La. C.C.P. art. 224(2). Proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. Kent v. Stewart, 413 So.2d 583 (La.App. 1st Cir.1982). To find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of court intentionally, knowingly, and purposely, without justifiable excuse. The trial judge is vested with great discretion in determining whether a party should be held in contempt for disobeying a court order. Lafourche Gas Corporation v. Daniel Oil Company, 484 So.2d 734 (La.App. 1st Cir. 1986).
The parties argue at length about whether this contempt proceeding was civil or criminal in nature. In a civil contempt case, the punishment is remedial or coercive; punishment in a criminal contempt case is punitive and intended to vindicate the authority of the court. A jail sentence is punitive/criminal if it is limited to imprisonment for a definite period; it is remedial/civil if the defendant stands committed unless and until he performs the affirmative act required by the court's order. Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988); In re Milkovich, 493 So.2d 1186 (La.1986).[2] It seems clear that the jail sentence imposed here is punitive/criminal. The trial court stated that it felt compelled to "impose additional penalties." The incarceration order contains no "purge clause" permitting Mr. Levy to avoid or terminate the sentence by complying with previous court orders; the court stated it would consider releasing Mr. Levy from jail only on a joint motion from the parties.
As the instant proceeding was criminal in nature, Mr. Levy was entitled to constitutional protections, including the requirement that the offense be proved beyond a reasonable doubt. Hicks, 485 U.S. at 632, 108 S.Ct. at 1429-1430; Milkovich, 493 So.2d at 1189. On appellate review of a criminal conviction, the reviewing court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that every element of the crime of which the defendant was convicted was proved beyond a reasonable doubt. Milkovich, 493 So.2d at 1189, citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Five of Mr. Levy's 15 assignments of error challenge the trial court's factual findings and its conclusions in the context of the permanent injunction and the June 2 order:
1) The trial court manifestly erred by concluding that the spreading of spent sandblasting material on Lots 27 and 29, and the Clesi strip, was a violation of the permanent injunction and/or the June 2, 1992 Order.
Mr. Levy does not contest the fact that he dumped spent sandblast on the lots. In oral reasons, the trial court stated that *291 "when you start dumping sandblast sand that's used in a business venture, that is part of the business operation. So, there's no doubt but what Lots Nos. 27 & 29 have clearly been used as a dump site for the sandblast sand that was involved in the business operations[.]" Mr. Levy argues that "the mere fact" that he used sandblasting material from his shipyard as landfill on lots Nos. 27 & 29 is insufficient to establish a violation of the permanent injunction, and he contends that he would have had to purchase sand or other material as fill for the property if he had not used the spent sandblast. He nevertheless testified at the November 13 hearing that Balehi would have had to "load it and haul it away" if it had not been used on the lots as fill. In light of the testimony, the court could not have been clearly wrong in concluding that the filling operation was a business one; the permanent injunction specifically prohibits any business activity on the lots.
2) The trial court manifestly erred by concluding that Levy and/or Balehi operated, placed or parked equipment machinery on Lots 27 and 29 and the Clesi strip in violation of the permanent injunction and/or the June 2, 1992 order.
The trial court's only specific finding on this point is in the context of a credibility call made favoring Capt. Newman's testimony over that of Mr. Levy and his employee. Stating that he had "no doubt" Capt. Newman's version of events in July and August was accurate, the court paraphrased Capt. Newman's testimony concerning photographs taken on August 2 which showed "heavy equipment, draglines, cherry pickers and other pieces of heavy equipment working on the 40-foot strip and the adjoining lots." The court's credibility call cannot be manifestly erroneous.
Furthermore, Jeron Fitzmorris, the court-appointed surveyor who inspected the property after the 60 days expired, testified that he observed a commercial-sized air compressor, among other things, present on the lots in question. Mr. Levy testified that the air compressor stored on the lot belonged to a man who was permitted to store his boats on the property at no charge. Nevertheless, the injunction stated that storing "pieces of machinery" on the property in question was prohibited.
3) The trial court manifestly erred by failing to find that Levy and/or Balehi complied with and substantially completed the requirements imposed by the trial court's June 2, 1992 order.
Mr. Levy relies heavily on a substantial compliance argument, citing Roy v. Berard, 227 La. 86, 78 So.2d 519 (1955), for the proposition that the law contemplates only actual, not technical, contempt. Roy was a child support case wherein the father had actually paid more than was owed under the judgment, although the amount of each payment did not specifically conform to the monthly amount set by the judgment. While Mr. Levy stresses the "minor" nature of his non-compliance, the record shows that noticeable quantities of debris, as well as a paint storage shed and pieces of commercial equipment, remained on the property long after the 60 days had expired. The court order mandated that Mr. Levy remove "all vestiges of non-residential usage" from the property. Mr. Levy's argument that some of the equipment and the shed were purportedly not in current use is thus irrelevant. The court did not err in finding that Mr. Levy failed to comply with the order.
4) Whether plaintiffs met their burden of proof to submit competent evidence in support of their Motion to Enforce the [June 2] Judgment.
The court heard testimony from the surveyor, Capt. Newman, and the Huseonicas, as well as from Mr. Levy and his employee, that heavy equipment had been operated on the lots well after the 60-day period. Moreover, Capt. Newman and both Huseonicas testified that residue from the sandblasting operation carried onto their property. The evidence before the trial court was sufficient to support a finding that non-residential activity continued on the property after the 60-day period.
Mr. Levy nevertheless argues that plaintiffs failed to prove, first, that he willfully ignored the order and, second, that his violations were without justification. The *292 willful and vindictive nature of Mr. Levy's actions is discussed hereinafter. For justification, Mr. Levy argues that he could not move part of his operation to non-residential property he owned across the bayou because he would need a permit and because it would be more costly and inconvenient to transport equipment across the bayou than to store it on the strip of land he owned in front of Capt. Newman's house. Inconvenience is certainly no justification for non-compliance with a court order, and Mr. Levy presented no evidence to show the costs of conducting the clean-up operation in a manner more consistent with the order. There is no merit to appellant's failure of proof argument.[3]
5) Whether Levy willfully committed any prohibited acts of retribution in violation of the court's [June 2] Order.
The trial court made no finding specifically regarding acts of "retribution" on Mr. Levy's part. The June 2 order decreed that the clearing process be done in a manner showing "no retribution for this action against Mr. Levy's neighbors in the community, including, but not limited to, the removal of trees on the affected property." Both Mr. Levy and Balehi's assistant manager, Craig Budan, testified that trees were removed from the lots during the clearing process, but that this was necessary because the trees had grown up around and amid equipment and debris which had to be removed.
William Huseonica testified that he and his wife were attempting to celebrate their anniversary on the evening of September 1. The noise from the shipyard became so annoying that Mr. Huseonica called Mr. Levy to ask if he could abate the noise. Mr. Huseonica testified that Mr. Levy told him he would not have to run the shipyard at night if he could use lot No. 27 and lot No. 29, and that Mr. Huseonica should be glad that Mr. Levy had generated additional income only by increased hours at the yard rather than by establishing a trailer park next to the Huseonicas' yard. Sherryl Huseonica testified that sandblasting noise, whistles and loudspeaker noise had become significantly worse since the May hearing.
Capt. Newman testified that Mr. Levy called him before the May hearing and asked him to influence the other neighbors to withdraw their contempt action; if Capt. Newman did not comply, Mr. Levy told him, he would place the equipment that had to be moved onto property directly in front of Capt. Newman's property. Capt. Newman testified that he "accepted" this statement as a threat. In July, Mr. Levy sent Capt. Newman a letter explaining that he would no longer allow Capt. Newman to pass over his property to gain access to his own property, although Mr. Levy would continue to permit Capt. Newman's tenant in an adjacent house to use the right-of-way. Mr. Levy testified that he wrote the letter because he and Capt. Newman "had had bad feelings" because of the intervention in the suit. When asked if his purpose in writing the letter was "to get back at" Capt. Newman, Mr. Levy testified: "I guess you'd say it was."
Assuming that the trial court based its ruling in part on a finding that Mr. Levy acted vindictively, we cannot find manifest error. Even if the trees were not removed maliciously, Mr. Levy admitted he had denied Capt. Newman access to a long-established right-of-way "to get back at" him. This act was admittedly vindictive and unarguably willful.

CONTEMPT
Generally, the evidence presented sufficiently proved that Mr. Levy knowingly operated his business in violation of the permanent injunction prior to the May 14 hearing, and that his compliance with the June 2 order was incomplete and performed in a way to cause his neighbors inconvenience. *293 Mr. Levy testified that nothing went on in the yard without his knowledge, so he was not ignorant of the events.
Many factual findings in this case were necessarily credibility calls entitled to deference; the trial court enjoys wide discretion in finding contempt. Thus, we hold that the evidence was sufficient for a rational trier of fact to conclude that every element of the charge was proved beyond a reasonable doubt.
Mr. Levy also raises several constitutional arguments:
10) Whether Mr. Levy was afforded adequate protection and given adequate notice under the due process and equal protection provisions of the federal and state constitutions in connection [with] the events leading up to the November 13, 1992 hearing, and the testimony and evidence presented.
11) Whether the trial court followed the requirements of the Louisiana Codes of Civil and Criminal Procedure.
Mr. Levy argues that the trial court found him in contempt of court solely because of two factors: the dumping of sandblast material on the property and on purported acts of retribution. He contends that his attorney did not know until November 12, the day before the hearing, that plaintiffs planned to challenge the sandblast dumping operation and that he had inadequate notice of this "charge."
The rule for contempt must set out the alleged contempt correctly, precisely, and explicitly so that the party cited for contempt may know the nature of the charges against him. La. C.C.P. art. 225 A; Geo-je's Civic Association, Inc. v. Reed, 525 So.2d 192, 196 (La.App. 1st Cir.1988), and citations therein. Mr. Levy states in brief that "it is undisputed that the rules filed by the plaintiffs and Mr. Newman, and the notices issued by the court, do not mention the spreading of spent sandblasting material as a basis for the contempt rule." However, plaintiffs' original rule for contempt avers that "defendants have deposited what appears to be sand which may possibly be contaminated with sandblasting wastes, trash and paint, and have buried various materials on the aforementioned property." (Emphasis added.) Mr. Levy's notice argument is without merit.
Mr. Levy notes that State v. Minnieweather, 587 So.2d 1190 (La.App. 2d Cir.1991) holds that La.C.Cr.P. art. 894.1 applies to contempt of court sentences. Sub-paragraph C of the article as it was amended effective January 1, 1992, decrees that "[t]he court shall state for the record the considerations taken into account, including any aggravating and mitigating circumstances which may be present, and the factual basis therefor in imposing sentence." The trial court amply outlined the factual basis for its contempt finding at the November hearing. Although the trial court did not address any circumstances considered in sentencing either in November or at the December hearing on Mr. Levy's motion for reconsideration, it is unnecessary for this court to discuss the applicability of Article 894.1 to contempt proceedings, in light of our decision to amend the sentence.
Mr. Levy further argues that the trial court's oral reasons do not satisfy the requirements of La. C.C.P. art. 225 B, which mandates that the court, on finding a defendant guilty of contempt, "shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed." Apparently, Mr. Levy is contending that the article requires that the factual basis be written in the order or judgment itself. The cases relied upon (Sears, Roebuck & Co. v. Britton, 539 So.2d 962 (La.App. 2d Cir.1989) and Minnieweather) do not so hold. The trial court's November 16 signed order mandates Mr. Levy's incarceration for the "reasons assigned in open court on November 13, 1992"; the oral reasons were more than adequate to satisfy La. C.C.P. art. 225 B.
14) Whether Mr. Levy's constitutional rights against double jeopardy have been implicated and violated by the trial court's sentence and the inadequate notice provided to Mr. Levy of the charges against him.
Mr. Levy fails to explain how double jeopardy applies in this case. The record before this court shows only one document finding *294 Mr. Levy guilty of contempt, the June 2, 1992 judgment. This judgment fined Mr. Levy and ordered him to clean up the property "in default of which he be returned to Court for the imposition of additional penalties for this violation which is a sentence of up to six months in the parish jail or an incarceration until such time as the order is complied with." The order following the November hearing on plaintiff's motion to enforce simply imposes the "additional penalties" the court warned Mr. Levy of if he did not comply with the June order.
Assignments 6-9 challenge the 90-day sentence.
6) The trial court manifestly erred by ordering that Mr. Levy be incarcerated for a period of ninety days in St. Tammany Jail, which constitutes a cruel, unusual and excessive punishment.
7) The trial court manifestly erred by denying the defendants' Motion for Reconsideration and maintaining the effect of its order requiring the incarceration of Mr. Levy for a period of ninety days in St. Tammany Jail.
8) The trial court manifestly erred by failing to consider Mr. Levy's precarious health and medical condition in requiring the incarceration of Mr. Levy for a period of ninety days in St. Tammany Jail.
9) Whether the trial court imposed a cruel, unusual and/or excessive punishment upon Mr. Levy under the federal and state constitutions and applicable laws, rules and statutes in light of the undisputed facts concerning Mr. Levy's health [sic] medical condition, and failed to consider mitigating circumstances.
In light of the medical evidence offered in support of Mr. Levy's motion to reconsider, we conclude that the trial court should have reconsidered the length of its sentence. Ninety days is excessive. Although we do not deprecate the seriousness of Mr. Levy's long-lived contemptuous attitude toward the rights of his neighbors, we believe that a shorter sentence will capture his attention and sufficiently vindicate the dignity of the court.
Under the circumstances presented herein, we amend the sentence to reduce it to 45 days in the Parish jail. In light of our action, it is unnecessary for us to address Mr. Levy's two assignments on the issue of his right to appeal the judgment of contempt; nor is it necessary to address his request for recusal of Judge James.
The writ is granted insofar as it relates to relator's request to modify the sentence. As to all other requests for relief, the writ is denied, and the judgment of the trial court is affirmed. Costs of appeal are assessed against appellant.
SENTENCE AMENDED; WRIT OTHERWISE DENIED; JUDGMENT OTHERWISE AFFIRMED.
NOTES
[1] Mr. Levy originally owned the property and the company with Mark P. Banjavich, Vincent J. Robin, III, and John B. Wilkinson.
[2] Hicks states that the critical features in determining whether the contempt proceeding is civil or criminal are the substance of the proceeding and the character of relief afforded. This statement seems to undermine the holding in State v. Taylor, 554 So.2d 232, 233 (La.App. 2d Cir. 1989), writ denied, 556 So.2d 599 (La.1990) that "[a] contempt proceeding ancillary to a civil proceeding assumes the quality of a criminal or quasi-criminal proceeding only after a criminal sentence has been imposed." (Emphasis added.)
[3] Additionally, Mr. Levy contends, in a general fashion, that irrelevant and prejudicial testimony was permitted at the hearing, and that many of the photographs admitted were not provided to his counsel prior to the hearing. La. C.E. art. 103 A(1) provides that error may not be predicated upon an evidentiary ruling in the absence of a timely objection. In a footnote, he further alleges, presumably as an excuse, that his right to effective assistance of counsel was compromised by his trial attorney's failure to object to the introduction of allegedly inadmissible testimony and evidence. However, the writ application cites no law on either the evidence issue or the ineffective assistance issue.