J^FITZSIMMONS, J.
The defendant, Joseph B. Billiot, Jr., filed a rule to show cause why the Department of Social Services, Office of Community Services (OCS), should not be held in contempt. Mr. Billiot, the domiciliary parent, alleged that OCS placed his child in the domiciliary custody of her mother, without an order of the court or Mr. Billi-ot’s agreement. Mr. Billiot and his former wife, Pamela McWilliams Billiot, both filed rules asking for sole custody.
The trial court held a hearing on May 7 and May 10, 1999 to determine (1) the custody of the Billiot children and (2) if the OCS should be cited for contempt. The trial court maintained the prior custody award: joint custody for the parents, with Mr. Billiot as the domiciliary parent. The court also held the OCS in contempt for willfully disobeying the court’s judgment. The costs of the hearing were assessed to OCS. On June 4, 1999, the trial court held a hearing to determine the punishment for contempt. The trial court fined OCS $500. OCS appealed.
The trial court gave the following oral reasons for its decision:
I think [the child] didn’t tell the truth. I think what happened was the door hit her when she was coming out of the bathroom, and I think the bruise she got there became the excuse. [She] wants to go live with her .mother.
[[Image here]]
I find that [the father] did not hit her.
[[Image here]]
As to [OCS], I find that they willfully defied the orders of this [c]ourt. I find that they were aware that there was a custody decree of this [c]ourt awarding joint custody to the parties with Mr. Billiot being the custodial parent. Without any semblance of due, process whatsoever they took this child from Mr. Billiot and gave it to Ms. Billiot. That was wrong.
[[Image here]]
I find that Mr. Billiot did not in any way consent to [a voluntary placement of the child with the mother].
Additionally, the trial court found that OCS had not called the duty judge to ask for an emergency order before the placement, and, during the investigation, OCS interviewed the mother about the incident, but not the father or his family.
OCS asserts that it was not a party to the divorce or custody proceeding before the court, was not the subject of any judgment of the court, and did not willfully disobey the court or its judgment. OCS argues that because OCS was not a party to the proceeding, the trial court erred when it held OCS in contempt, and assessed the cost of the hearing to OCS.
|sAuthority to punish for contempt of court falls within the inherent *426 power of the court to aid in the exercise of its jurisdiction and to enforce its lawful orders. Bartels de Nunez v. Calenda Bartels, 97-1384, p. 13 (La.App. 1 Cir. 9/9/98), 727 So.2d 463, 470. “A contempt of court is any act ... tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.” La. C.C. P. art. 221. “Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court” constitutes a constructive contempt of court. La. C.C.P. art. 224(2). To find a person guilty of constructive contempt, it is necessary to find that the contemnor violated the order of court intentionally, knowingly, and purposely, without justifiable excuse. The trial court is vested with great discretion in determining whether a person should be held in contempt for disobeying a court order. However, proceedings for contempt are strictly construed and extending the scope is not favored. Estate of Graham v. Levy, 93-0636, 93-0134, p. 4 (La.App. 1 Cir. 4/8/94), 636 So.2d 287, 290, writ denied, 94-1202 (La.7/1/94), 639 So.2d 1167.
Only the court or “a party to the action or proceeding” may file the rule to show cause. La. C.C.P. art. 225A. However, the Code of Civil Procedure does not specifically confine the persons who can be charged with contempt to the parties. The code refers to “a person charged with committing a constructive contempt,” not only a party charged with contempt. La.C.C.P. art. 225A; see Graham v. Jones (In re Times-Picayune Pub. Co., Inc.), 200 La. 137, 7 So.2d 688 (1942), and cases following through 200 La. 183, 7 So.2d 703 (1942); see also State in Interest of R.J.S., 493 So.2d 1199, 1202 (La.1986) (The Louisiana Supreme Court chose not to address the issue of contempt sanctions for a non-party to the litigation, but did not foreclose the possibility.). Obviously, for a non-party to be held in contempt for “wilful disobedience” of a judgment, the non-party must have actual knowledge of the judgment and act unjustifiably and intentionally to thwart the judgment of the court. See Roe v. Operation Rescue, 54 F.3d 133, 140 (3d Cir.1995) (In federal court, a non-party to a judgment can be held in contempt if the non-party had knowledge of the judgment and abetted parties in violating it.); Thibodeaux v. Thibodeaux, 99-618, p. 3 (La.App. 5 Cir. 11/10/99), 748 So.2d 1180, 1182 (Appellate court found that OCS was not a party to the judgment or aware of the judgment, and thus, could not be held in contempt.).
|4The factual findings are subject to a manifest error review. See Estate of Graham, 93-0636, 93-0134, at p. 4, 636 So.2d at 290-291. The standard to use for the burden of proof depends on the nature of the proceeding, whether it is criminal or civil. Estate of Graham, 93-0636, 93-0134, at p. 4, 636 So.2d at 290. In civil contempt, the punishment is remedial or coercive. Punishment in a criminal contempt case is punitive and intended to vindicate the authority of the court. Id. In other words, an unconditional penalty, one that the contemnor cannot affect or end, is criminal in nature. A conditional penalty, which compels the contemnor to comply with the court’s order to end the penalty, is a civil one. Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 633, 108 S.Ct. 1423, 1430, 99 L.Ed.2d 721 (1988). If the penalty imposed is criminal in nature, the burden of proof of the elements of contempt must be beyond a reasonable doubt. Hicks, 485 U.S. at 632, 108 S.Ct. at 1429-30; Estate of Graham, 636 So.2d at 290. “[F]or criminal contempt, the act or refusal to act must be done with an intent to defy the authority of the court.” State in Interest of R.J.S., 493 So.2d at 1203. Wil *427 ful disobedience requires an awareness “of the duty to obey the order and an intent to disregard that duty.” Id. On appellate review of a case of criminal contempt, the reviewing court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that every element of the criminal contempt was proved beyond a reasonable doubt. Estate of Graham, 686 So.2d at 290.
CONTEMPT
The fine was an unconditional penalty; one that could not be affected by the defendant in rule, OCS. Thus, the contempt was criminal in nature. To affirm the contempt holding and fine, we must find that the evidence was sufficient for any rational trier of fact to conclude that OCS was conscious “of the duty to obey the order,” had “an intent to disregard that duty” and “to defy the authority of the court.” State in Interest of R.J.S., 493 So.2d at 1203.
The record provides a reasonable basis for the trial court’s factual findings that Mr. Billiot did not hit his daughter, he did not agree to a voluntary placement with the mother, OCS did not' obtain the intervention of the court, and OCS knew of the custody order of the court. On the knowledge issue, OCS admitted it knew of the joint custody | sorder. After service on OCS of Mr. Billiot’s rule for contempt, OCS knew or should have known of Mr. Billiot’s status as the court-designated domiciliary parent. Also, OCS drew its conclusions, and acted, without interviewing Mr. Billiot or the family members who witnessed the accident that led to the bruising.
Certainly OCS must take appropriate action to protect a child. However, these actions must be within the law. Based on our review of the record and the findings of the trial court, we cannot say that the evidence was insufficient to show, beyond a reasonable doubt, that OCS intentionally, and unjustifiably, disobeyed the order of the court.
OCS conducted only an extremely limited investigation. Based on limited information, OCS took the child from the domiciliary parent, and placed the child with her mother, without Mr. Billiot’s approval or court authority. After service of the contempt rule, and with the knowledge of the custody and domiciliary order of the court, OCS did nothing to obtain further information on the incident, seek approval of the court at that time, or return the child to Mr. Billiot. OCS ignored the need to follow and substantiate good procedure before violating, not only a parent’s rights, but also the order of the court. Under the particular circumstances here, we find no excuse for OCS’s failure to follow proper procedure or OCS’s actions in defiance of the court’s order.
COSTS
The OCS does not assert that it was not served with the contempt rule or with the rule filed by the mother to have the OCS made a party to the custody matter. The OCS appeared at the hearing on the contempt and custody matters, and was represented by counsel. Although the hearing covered more than one matter, it was clear that the focus of the hearing was the allegation of abuse and the actions of the OCS that appeared to support the allegation. For these reasons, we cannot say the trial court abused its much discretion in assessing the costs of the hearing to OCS. By failing to follow proper procedures, OCS unnecessarily added to the confusion and need for the hearing.
hWe affirm the judgment of the court. The costs of the appeal, $1143.51, are assessed to the State of Louisiana, Depart- *428 merit of Social Services, Office of Community Services.
AFFIRMED.
FOIL and DOWNING, JJ., dissent.
KUHN, J., concurs.