STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-703


CRYSTAL MARIE BENNETT FONTENOT

VERSUS

JEREMY KEITH FONTENOT


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2021-3113
HONORABLE LILYNN ANNETTE CUTRER, JUDGE PRO TEMPORE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Shannon J. Gremillion, Jonathan W. Perry, and Sharon Darville Wilson, Judges.


AFFIRMED IN PART AS AMENDED;
REVERSED IN PART.

**NaTashia Carter Benoit**
**Carter Benoit & Associates, LLC**
**11616 Southfork Avenue, Suite 201**
**Baton Rouge, LA 70816**
**(225) 253-2637**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Jeremy Keith Fontenot**

**Walter M. Sanchez**
**Jennifer E. Jones**
**Sanchez Burke, LLC**
**1200 Ryan Street**
**Lake Charles, LA 70601**
**(337) 433-4405**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Crystal Marie Bennett Fontenot**

**GREMILLION, Judge.**

Jeremy Keith Fontenot appeals the trial court's child support and interim spousal support awards to Crystal Marie Bennett Fontenot, finding him in contempt for arrears for both, and the award of attorney fees. For the following reasons, we affirm as amended and reverse in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Jeremy and Crystal were married in November 2017; they have one son who was born in October 2019. Crystal filed for divorce on August 4, 2021. A judgment of divorce was granted November 17, 2022. In the interim, many pleadings were filed and conferences held.

The initial hearing officer conference was scheduled for September 16, 2021. On August 12, 2021, Crystal filed "Set 1 Interrogatories and Request for Production of Documents." Following the September 16, 2021 hearing officer conference, Crystal appealed. Beginning with the hearing officer's recommendations, which were filed into the record on September 29, 2021, Jeremy's unwillingness to provide any financial documentation commenced. The hearing officer noted, "The main problem was that Jeremy produced no documents . . . he clearly is not interested in showing maximum income for child support purposes." In November 2021, the parties were referred to mediation, but no agreement could be reached.

On January 14, 2022, Crystal filed a motion to compel discovery because Jeremy failed to answer discovery propounded on August 12, 2021. A hearing on the motion was scheduled for February 8, 2022. On February 9, 2022, a stipulated judgment on the motion to compel was entered into the record that ordered Crystal to provide an updated notice of deficiencies relating to discovery and Jeremy to

provide updated responses by February 23, 2022. He was ordered to pay $2,000.00 in attorney fees and all court costs.

On April 1, 2022, Crystal filed a rule for contempt, attorney fees, and costs, arguing that Jeremy failed to comply with the trial court's order. On October 18, 2022, Jeremy filed a rule to show cause why divorce should not be granted and a rule to terminate interim spousal support.

On November 7, 2022, Crystal filed a rule for contempt, attorney fees, and costs, alleging Jeremy was in arrears for child support and interim spousal support. A judgment of divorce was granted on November 17, 2022. A hearing officer conference was scheduled for December 5, 2022, requesting financial documents from the parties.

Following a November 28, 2022 hearing, the trial court rendered a judgment on December 22, 2022, ordering that Jeremy pay past due child support in the amount of $60,003.81 plus legal interest; $28,119.76 in past due spousal support; fixed child support at $4,636.00 per month; and fixed interim spousal support at $2,500.00 per month. Jeremy was held in contempt for failure to produce the required financial information and was sentenced to thirty days imprisonment which was suspended conditioned upon the payment of all past due child support, spousal support, and attorney fees. A separate judgment regarding attorney fees was also filed on December 22, 2022, and cast Jeremy with attorney fees in the amount of $26,128.00.

A hearing officer conference report with recommendations following a hearing officer conference on December 5, 2022, found Jeremy in contempt. He was ordered to pay attorney fees of $800.00 and sentenced to thirty days in jail which would be suspended upon compliance with his support obligations and the payment

2

of attorney fees. The trial court signed a judgment making the hearing officer's recommendations the judgment of the court. The report and judgment were filed into the record on January 10, 2023.

Jeremy filed a motion for new trial on January 13, 2023. Crystal filed an opposition to Jeremy's motion for new trial, motion to stay, and motion for modification on March 28, 2023. A hearing officer conference was scheduled for May 8, 2023. On April 14, 2023, Crystal filed a rule for contempt, attorney fees, costs, and a warrant for arrest. The trial court issued an arrest warrant for Jeremy for contempt for non-payment of child support. Jeremy filed an emergency motion to quash and/or arrest the warrant of arrest which was denied by the trial court. On May 9, 2023, Jeremy filed an emergency habeas corpus petition for his release and an emergency hearing thereon which was also denied by the trial court. That same day, Crystal filed a motion and order for leave to file a first supplemental and amended rule for contempt, attorney's fees, costs, and a warrant for arrest. Also on May 9, 2023, a hearing officer order scheduled a conference on June 19, 2023. Jeremy filed a supervisory writ with this court relating to his emergency motions to quash and for habeas corpus. A panel of this court granted the writ in part and denied it in part on May 12, 2023, finding that Jeremy did not receive proper service because Jeremy's former attorney withdrew on January 9, 2023, and the trial court's judgment was issued on January 11, 2023:

> Considering the due process concerns created by the lack of proper service of the January 9, 2023 judgment finding Relator in contempt, we find the April 24, 2023 warrant for Relator's arrest was improper in that it was based on his failure to comply with a judgment for which he was not properly served. Thus, we find Relator's "Emergency Motion to Quash and/or Arrest the Warrant of Arrest" was improperly denied. Accordingly, we grant Relator's writ application, in part; remand the case for Relator to be released from jail; for Relator to be properly served with the trial court's January 9, 2023 judgment;

3

and for further proceedings consistent herewith. We further find that this ruling moots Relator's "Emergency Habeas Corpus Petition for the Release of Jeremy Keith Fontenot From the Custody of Calcasieu Parish Sheriff and Request for Emergency Hearing Thereon."

Following an April 6, 2023 hearing, the trial court denied Jeremy's motion for new trial in a judgment signed on June 5, 2023. Jeremy filed a suspensive appeal, which Crystal opposed pursuant to La.Ch.Code art. 366 and La.Code Civ.P. art. 3943, which forbids the suspension of a child support judgment. Jeremy's appeal was thereafter converted to a devolutive appeal by the trial court. Jeremy then filed a motion for a reduction of the costs of appeal and a motion for an extension to submit costs, which were denied by the trial court.

On September 7, 2023, Jeremy filed an answer, affirmative defenses, and a reconventional demand in response to Crystal's motion to strike Jeremy's motion and order for suspensive appeal or, alternatively, motion to vacate order and request for expedited hearing. On September 12, 2023, Jeremy filed a notice of intention to apply for a supervisory writ relating to the trial court's orders of August 14, 2023, September 6, 2023, and September 7, 2023; however, there is no record that he ever did so.

On March 6, 2024, Crystal filed a motion for leave to file an untimely answer noting, in part:

> 2. Additionally, Crystal sincerely did not know whether Jeremy would file his appellant's brief as Jeremy had previously filed a "Notice of Intent to Apply for Emergency Supervisory Writ, Request for Stay, and Request for Return Dates," on September 12, 2023 with the trial court, which the trial court granted and stayed "all matters of the trial court … until such time as the 3rd Circuit Court of Appeal has ruled on this Emergency Writ Application." Despite receiving two extensions by the trial court for a total extension of 78 days to file his writ (108 days from the first judgment complained of), Jeremy failed to file his Application for Supervisory Writ with the Court.

4

3. However, Jeremy reaped the benefit of the stay which further delayed the hearing on Crystal Marie Bennett's Rule for Contempt to Failure to Pay Child Support against Jeremy Keith Fontenot, filed April 14, 2023, from being heard by the Hearing Officer until December 12, 2023, despite already having been continued four times to accommodate Jeremy and/or his counsel's scheduling conflicts and his argument that his "suspensive appeal" prevented the hearing officer from hearing the contempt proceeding, despite La.C.C.P. art. 2964, art. 3943, and La. Children's Code art. 336(c). Crystal incurred significant attorney fees in handling that matter alone.

4. As a result, Crystal did not timely file an answer as she could not determine whether Jeremy's appeal had any merit and could not have known if Jeremy would ultimately file his appeal, which he did 83 days after the original return date of November 29, 2023, and only after receiving three extensions and waiting until the last possible day to file his brief before his appeal would be dismissed for abandonment in accordance with Uniform Rule 2-8.6

Crystal answered for the sole purpose of considering the imposition of sanctions against Jeremy for filing a frivolous appeal. We referred this motion to the merits.

## ASSIGNMENTS OF ERROR

Jeremy assigns as error:

1. The trial court erred in its imputing, calculating and award of child support.

2. The trial court erred in not imputing an actual gross income to Jeremy Fontenot and/or in the alternative, in the erroneous imputing of a phantom income for the setting of child support, spousal support and the retroactive dates and amounts.

3. The trial court erred in its expanding of the pleadings without due process of law and in its finding/holding of appellant in of [sic] contempt of the expanded pleadings without due process of law and the implementation of the penalties and attorneys fee and/or excessive attorney fees.

4. The trial court erred in denying the motion for new trial.

5

# DISCUSSION

## *Testimony at the November 28, 2022 hearing*

Jeremy testified he is a licensed contractor and half owner of New Wave Properties, LLC, which performed contractor work particularly following Hurricanes Laura and Delta. Jeremy said that in 2020, he was paying himself a salary of $3,500.00 per month; however, he refused to answer what the gross sales of New Wave Properties, LLC was in 2020 or produce any documents relating to company profits. Jeremy claimed he gave monthly profit and loss statements to his lawyer. After a recess, Jeremy produced an assortment of handwritten receipts bearing no information other than a business name and a cash amount paid. Jeremy admitted he did not file any 1099s for the amounts paid when questioned about a number of invoices. However, he then stated he did give the people who performed work for him 1099s, but they were at his house. He admitted he did not produce them in discovery or in court that day. However, he then produced a document to his lawyer with some 1099s purporting to pay $370,600.00 to Frank Hernandez, $45,480.00 to George Dominguez, and $3,365.00 to Kathryn Carpenter in 2021. Jeremy said he paid these people in cash, had no cancelled checks, and these amounts were not reflected on his tax return. He produced no invoices for materials purchased but claimed the invoices were at his house. Jeremy admitted telling Crystal that he received $800,000.00 in two months but stated that he was probably exaggerating. Jeremy was then shown texts and photos he sent to Crystal regarding the $800,000.00 and stacks of $100 bills. Regarding Jeremy's business practices, he was questioned:

> Q. You had telephone conversations with Crystal when you were trying to get her to come back, right?

A. Yes, sir.

Q. And you told her – you admitted you were hiding money in those conversations, didn't you?

A. I did, yes, sir.

Q. You talked about not only hiding money, but you were getting better at it; you knew how to do it and you were doing it better, right?

A. Yes, Sir.

Q. And you talked to her about ghost money, right?

A. I don't recall.

Q. You called it – when you talked to her, do you recall using the phrase "ghost money"?

A. Yes, sir.

Q. Okay. And what that means is ghost money, it's here, but it's not really here, right?

A. Right, yes, sir.

Q. It's hidden.

A. Right, yes, sir. That's what I was implying.

Q. And you told her, "All that money is mine. It's not New Wave Properties," right?

A. Yes, sir.

Q. That money is in a safe. It does not exist.

A. Yes, sir.

Q. It's a ghost.

A. Yes, sir.

Q. And so that is what you were telling Crystal.

A. Yes, sir.

Q. Okay. And real businessmen who do business with payroll and accounting and checks and 1099s and reports to the IRS, they don't do

7

business in ghost money, do they? They do business above board and professionally, right?

A. Yes, sir.

Q. But you're a ghost money guy.

A. No, sir.

Q. That's what you told her.

A. I did tell her that.

In 2021, New Wave Properties grossed $1,675,568.37, but Jeremy testified his final net income was -$27,465.80. In response to interrogatory number four requesting Jeremy's gross income from the last three years and year-to-date, including bonuses, company paid benefits, or company paid expense reimbursement, Jeremy replied, "Refer to tax statement for previous gross incomes." The only tax returns submitted into evidence were from 2018 and 2019, when Jeremy was employed at a plant. Jeremy's 2018 tax return shows a gross income of $104,930.00, and his 2019 tax return shows a gross income of $93,164.00. In 2021, Jeremy claimed a gross income of $20,674.00, stating that he did not pay himself that year.

Crystal testified that she has worked for the clerk of court for sixteen years and makes $33,000.00 per year. Crystal related their son's serious medical issues that required she hire a private sitter for $405.00 per week and provided cancelled check evidence of the payments to the private sitter beginning January 2022 through September 2022. She testified that Jeremy refused to provide statements relating to his CashApp account, Bitcoin, Acorn accounts, and E*TRADE accounts. She requested that his child support calculation be based on the highest amount allowed,

$40,000.00, based on the deposits into Jeremy's personal banking accounts.  At the

conclusion of the hearing the trial court stated:

> The Court was hoping that there would be some evidence adduced that would refute what's been testified to here today and that the hearing officer's recommendations reflect an amount is basically what would be a – what would be – the Court can only consider as guesswork.  I'm yet to hear from Mr. Fontenot a plausible explanation for not providing what is clearly discoverable evidence.  Quarterly statement, monthly statements, anything from any professional that would reflect – now, I understand Mr. Fontenot is not alone.  This Court has seen many, many what's deemed hurricane cases where people are out making money they never made before because of the vast demand and need.  And I think the hearing officer said it best.  We've had one natural disaster after another between COVID and then two hurricanes and a 100-year flood and a 100-year freeze.  The Court certainly understands how someone who is ambitious can go out there and make some money.  The problem is here when it comes to [La.R.S] 9:315 in the Code, the Court should be able to ascertain one's income if for nothing else, child support purposes.

> . . . .

> I have someone who making a very respected six figure salary with a plant that provided, the Court can only imagine – and it's one of the luxuries of living in Southwest Louisiana is many of the jobs are solid benefits packages and salaries and things of that nature.  I can't blame Mr. Fontenot for not going and exploring ways to make additional income, and it sounds like he's done a good job of that.

> The problem is I can't determine from what he's provided what his income is.  I was hoping today would give us some idea, provide some kind of guidance.  I know what it's not.  It's not minimum wage, and it's not the $30,000.00 showing on the tax return.  And I don't think it's 800,000 he made in two months.  It's somewhere in the middle.  And in determining that and under Louisiana Civil Code Article 134 when this Court always should consider the best interest of the child, we're going to err on the side of the child.

> . . . .

> I am going to adopt and accept P23 as the child support obligation because I think that the lack of information this Court has on father's real income and what he has benefit of with his relationship with his company, which is clearly discoverable but never provided, that the amount that's shown in P23 should be used.  So I'm going to order that the father be ordered to pay $4,636 a month in child support retroactive to the date of request.  That's the filing date.

9

The trial court also awarded $2500 in interim spousal support, stating:

> I'm also going to order – and I think after calculation using the child support amount, putting him in the 37th percentile tax wise, giving him a percentage of interim spousal support, I think $2500 is fair. It's less than what I would order, but I think it's fair. So I'm going to order he pay $2500 a month.

The trial court then found Jeremy in contempt for failing to pay and ordered that the arrearages be paid within 180 days.

***Testimony at the April 6, 2023 hearing***

At this hearing, the trial court denied Jeremy's motion for new trial, noting, "But as we discussed in pretrial, I was not the trial judge, and I think it's best that the matter go up on appeal." Jeremy then requested that he be able to proffer tax returns from 2020, 2021, and 2022. Crystal objected, noting that nothing was attached to the motion for new trial, and the documentation was not produced through discovery and was generated subsequent to the trial court's decision. Additionally, Crystal noted that there was no affidavit in support of the newly discovered evidence.

***Assignment of Error Number One***

Jeremy appeals the trial court's award of $4,636.00 in child support per month, arguing that the trial court failed to use his actual income when calculating the child support payment. He also argues that an award for childcare expenses retroactive to filing was erroneous because Crystal did not incur childcare expenses. Jeremy argues that the trial court failed to attribute $33,000.00 per year in income to Crystal in its calculations.

We review a trial court's child support determination using the manifest error standard of review. *L.E.P.S. v. R.G.P.*, 10-1128 (La.App. 3 Cir. 3/16/11), 59 So.3d 523, *writ denied*, 11-770 (La. 5/27/11), 63 So.3d 999. Thus, if the trial court did not

commit manifest error or abuse its discretion, we will not disturb its child support order. *Id.*

The trial court based its child support calculation on the funds deposited into Jeremy's personal checking accounts in 2021. We find this to be completely reasonable under the circumstances. At any time, Jeremy could have proven his actual income was something other than the deposits into his personal checking account. However, he refused. He refused to clarify his income at the hearing. Jeremy admitted he hid his money from IRS detection via "ghost money" methods. We find no abuse of discretion in the trial court's determination of Jeremy's income based on the deposits into his personal checking account. The income attributed to Jeremy in 2021, $524,643.12, clearly places Jeremy in the uppermost category of the child support guidelines, which top out at a monthly child support payment of $2,816.00 per month when the combined adjusted monthly gross income is $40,000.00 or more. La.R.S 9:315.13. Jeremy's income alone exceeds the highest amount in the child support schedule. Pursuant to La.R.S. 9:315.13:

> B. If the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in R.S. 9:315.19, the court:
>
> > (1) Shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent as provided in Civil Code Article 141, but in no event shall it be less than the highest amount set forth in the schedule[.]

Jeremy's monthly income based on his personal checking account deposits is slightly more than $43,000.00. The monthly support payment of $2,816.00 in addition to the childcare fees of $1,620.00 per month totals $4,436.00. Crystal and Jeremy's son is insured through Crystal's employment at a cost of $200.00 per

11

month, which the trial court ordered Jeremy to pay, resulting in the total payment of $4,636.00 per month.

Crystal provided proof of the weekly childcare expenses she incurred so that she could return to work. However, she returned to work and began using the sitter in January 2022. Thus, any retroactive award from August 4, 2021 through January 1, 2022 must be reduced by five payments of $1,620.00, as Crystal was not incurring childcare expenses at that time. Accordingly, Jeremy is entitled to a credit of $8,100.00.

Finally, the trial court's judgment was based on the hearing officer's child support calculation worksheet, which did not impute any income to Crystal. However, when the child support obligation is based upon the highest amount specified in La.R.S. 9:315.19, the trial court has discretion in setting forth the obligation based on the best interests of the child and the circumstances of each parent. La.R.S. 9:315.13; *Weinstein v. Weinstein*, 10-1083 (La.App. 3 Cir. 4/13/11), 62 So.3d 878. We find no error in the trial court's calculation, which did not impute any income to Crystal, a civil servant whose income is a fraction of Jeremy's. This assignment of error is without merit.

***Assignment of Error Number Two***

In this assignment of error, Jeremy argues that the trial court "failed to actually impute a gross income for [him], a self-employed contractor who co-owned fifty percent of a business[.]" He claims the trial court did not do a single calculation and imputed him with a "phantom income" without deducting ordinary business expenses. He further argues the spousal support award based on this income was erroneous, and that Crystal did not establish a need for interim spousal support.

The entirety of the proceedings stemmed from Jeremy's failure to produce the documents that would have made the determination of his income easy. As Crystal notes in her brief:

> Ultimately, Jeremy never produced his K-1, W-2, 1099s, balance sheets, financial statements, monthly profit and loss statements, canceled checks, receipts, expenses, his business credit card statements, or a copy of financial statements provided to lending institutions as ordered by the court, R. 27-28, nor did he produce his tax returns R. 318, third party invoices for business expenses R. 337-338, among other documentation, despite repeated requests. Crystal had to subpoena bank statements for Jeremy's bank accounts as he only produced partial statements.
>
> Despite over a year of discovery and multiple pretrial conferences wherein Jeremy was informed that Crystal was aware of the $524,643.34 deposited into his bank account and given the opportunity to traverse that figure, Jeremy did not present any evidence to traverse that amount.

Having reviewed the record, we find this to be an accurate representation of the facts. Jeremy had every opportunity to contest the income attributed to him (amounting to $480,000.00, significantly less than the $524,643.12 deposited into his personal checking account) but chose not to do so. For the reasons noted in assignment of error one, the calculation of $4,636.00 in child support based on an imputed income from Jeremy's bank statement deposits is not manifestly erroneous and the trial court did not abuse its discretion.

Finally, Jeremy argues the trial court erred in awarding Crystal $2,500.00 in interim spousal support.

> A spouse's right to claim interim periodic support is based on the statutorily-imposed duty of spouses to support each other during their marriage. *McAlpine v. McAlpine*, 94–1594 (La.9/5/96); 679 So.2d 85. It is designed to assist the claimant spouse in sustaining the same style or standard of living that he or she enjoyed while residing with the other spouse, pending the litigation of the divorce. *Daigle v. Daigle*, 96–541 (La.App. 3 Cir. 11/6/96); 689 So.2d 478. In determining an award of interim spousal support, the trial court is vested with wide discretion,

which will not be disturbed absent a clear abuse of that discretion. *Smoloski v. Smoloski*, 01–0485 (La.App. 3 Cir. 10/3/01); 799 So.2d 599.

*Piccione v. Piccione*, 01-1086, p.8-9 (La.App. 3 Cir. 5/22/02), 824 So.2d 427, 432.

While there is no testimony in the record pertaining to Crystal's need for interim spousal support, Jeremy failed to object because he did not appeal the hearing officer's recommendation awarding spousal support; therefore, he did not preserve that issue for appeal. *See* La.Ch.Code. art. 423(F); *Zheng v. Lin*, 19-84 (La.App. 5 Cir. 10/2/19), 282 So.3d 337; Uniform Rules Court of Appeal Rule 1–3. Accordingly, this assignment of error is without merit.

### *Assignment of Error Number Three*

In this assignment, Jeremy argues that he was not afforded due process of law when he was found in contempt; that the motion for contempt was rendered moot because he provided all the documents requested prior to the hearing on the motion; and, "the trial court expanded the pleadings before the court to find Appellant in contempt for child support and spousal support arrears when no such pleading was pending before the trial court at that time." Jeremy claims:

> While La.C.C.P. art. 862 grants the trial court authority to render a final judgment granting the relief to which the party in whose favor it is rendered is entitled; however, a judgment rendered beyond the pleadings is a nullity, and although a trial court has the discretion to allow enlargement of the pleadings to conform to the evidence.

Jeremy appears to argue that the contempt issues relating to child support and spousal support payments were not pending before the trial court on November 28, 2022, the date of the trial. For the same reasons, he also argues that attorney fees were impermissibly awarded. We note that Jeremy states repetitively in brief, "Appellant shows that…" but points to no actual evidence in the record of his various claims.

14

Crystal's April 1, 2022 rule for contempt, attorney fees, and costs was based on Jeremy's failure to comply with the court's order to produce the requested discovery. Crystal's November 7, 2022 rule for contempt was for child support and interim spousal support arrears.

Crystal's counsel clarified at the November 2022 hearing what the contempt findings were based on:

MR. SANCHEZ: Your honor, I believe – I want to make sure that the record is clear. I think we have a rule for contempt pending on the spousal support issue today. The child support order, that one is pending. So for clarity of the record, I would ask that the Court make the finding of contempt based on what was pending, which was the –

MS. JONES: The rule for contempt for failure to produce financial documents.

MR. SANCHEZ: That was in the motion with that.

THE COURT: Yeah, that was already in the motion. That's where attorney's fees are due as well.

The trial court's December 22, 2022 judgment stated:

IT IS FURTHER ORDERED ADJUDGED AND DECREED that Jeremy Keith Fontenot be and is hereby held in contempt of this Honorable Court for his failure to produce required financial information for the court's calculation of child support and interim periodic spousal support at trial. Jeremy Keith Fontenot be and is hereby sentenced to a term of imprisonment of 30 days in the Calcasieu Correctional Center for this contempt, to be suspended, conditioned upon his continuing compliance with the support ordered in this judgment and the payment of all past due child support, spousal support, and attorney's fees in these proceedings within 180 days of the signing of this judgment.

Crystal's April 14, 2023 rule for contempt, attorney fees, costs, and warrant for arrest was for Jeremy's arrears in paying child support and interim spousal support from December 2022 through April 2023 and in failing to pay $800.00 in attorney fees pursuant to the hearing officer's recommendation that Jeremy be found

15

in contempt, which was adopted by the trial court in a judgment signed on January 9, 2023.

> A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court is constructive contempt of court. See La. C.C.P. art. 224. Proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. *Estate of Graham v. Levy*, 636 So.2d 287, 290 (La. App. 1st Cir. 1994), *writ denied*, 94-1202 (La. 7/1/94), 639 So.2d 1167. The decision to hold a party in contempt of court for disobeying the court's orders is within the trial court's great discretion. Only if the appellate court finds an abuse of that discretion will a trial court's contempt ruling be reversed. *Leger v. Leger*, 00-0505, p. 3 (La. App. 1st Cir. 5/11/01), 808 So.2d 632, 635. However, the predicate factual determinations underlying the finding of civil contempt of court are reviewed under the manifest error standard of review. See *Rogers v. Dickens*, 06-0898, p. 7 (La. App. 1st Cir. 2/9/07), 959 So.2d 940, 945; see also *Mitchell v. Risher*, 11-1008 (La. App. 1st Cir. 12/21/11), 2011 WL 6780131 (unpublished opinion).
>
> A proceeding for contempt for refusing to obey a court's order is not designed for the benefit of the litigant, though infliction of punishment may inure to the benefit of the mover in the rule. *Welborne v. Welborne*, 29,479, p. 10 (La. App. 2nd Cir. 5/7/97), 694 So.2d 578, 585, *writs denied*, 97-1800 (La. 10/13/97), 703 So.2d 621 and 97-1850 (La. 10/13/97), 703 So.2d 623. Rather, the object of a contempt proceeding is the vindication of the dignity of the court. *Short v. Short*, 12-312, p. 5 (La. App. 5th Cir. 11/13/12), 105 So.3d 892, 895. In order to find a party guilty of constructive contempt, the trial court must find that he or she violated the order of the court intentionally, knowingly, and purposely, without justification. *Smith v. Pillow-Smith*, 10-0167, p. 4 (La. App. 4th Cir. 11/17/10), 52 So.3d 264, 267-68.

*Schmidt v. Schmidt*, 18-0202 pp. 6–7 (La.App. 1 Cir. 1/3/19), 270 So.3d 804, 809.

Louisiana Code of Civil Procedure Article 225 sets forth the procedure for finding a party in contempt of court (emphasis added):

> A. Except as otherwise provided by law, a person charged with committing a constructive contempt of court may be found guilty thereof and punished therefor *only after the trial by the judge of a rule against him to show cause why he should not be adjudged guilty of contempt and punished accordingly.* The rule to show cause may issue on the court's own motion or on motion of a party to the action or proceeding and shall state the facts alleged to constitute the contempt.

16

A person charged with committing a constructive contempt of a court of appeal may be found guilty thereof and punished therefor after receiving a notice to show cause, by brief, to be filed not less than forty-eight hours from the date the person receives such notice why he should not be found guilty of contempt and punished accordingly. The person so charged shall be granted an oral hearing on the charge if he submits a written request to the clerk of the appellate court within forty-eight hours after receiving notice of the charge. Such notice from the court of appeal may be sent by registered or certified mail or may be served by the sheriff. In all other cases, a certified copy of the motion, and of the rule to show cause, shall be served upon the person charged with contempt in the same manner as a subpoena at least forty-eight hours before the time assigned for the trial of the rule.

B. If the person charged with contempt is found guilty the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed.

The trial court's finding of Jeremy in contempt for failing to produce documents and for past due child support and interim spousal support was within its sound discretion. Jeremy claims in brief that he produced the documents, but his former attorney failed to relay his responses. Jeremy claims the rules for contempt heard at the November 2022 trial are "null, void, and also mooted by responses received."

We disagree. The trial court was well within its discretion in finding that Jeremy failed to produce any significant financial documents upon which it could make an income determination without having to rely on subpoenaed bank statements and that Jeremy was in arrears. However, service upon Jeremy was improper as we noted in our writ ruling, and there is no record of any hearing taking place subsequent to our writ ruling relating to the contempt findings of January 9, 2023, in violation of the requirements of La.Code Civ.P. art. 225. Accordingly, we reverse the trial court's January 9, 2023 judgment finding Jeremy in contempt for

17

failing to pay $800.00 in attorney fees and for child support and interim spousal support arrears.

*Assignment of Error Number Four*

In this assignment, Jeremy claims he has been irreparably injured because he was "wrongfully arrested and held without due process of law," and "wrongfully terminated as a result of the judgment(s) that give rise to this appeal and that he has been constantly harassed as a result of same." He continues that the temporary judge's refusal to hear the matter because it was not the original trial court was an abuse of its discretion. Jeremy argues that a new trial is warranted because the trial court failed to include Crystal's income in the child support obligation calculations; the trial court failed to impute an amount of income to Jeremy as his gross income; the trial court failed to determine each parties share of the total child support obligation; the trial court failed to determine the net income of the parties for the purposes of setting an interim spousal support award; the trial court failed to apply to apply the required test to Crystal's request for interim spousal support; the trial court expanded the pleadings in violation of due process; and, the trial court erred in awarding attorney fees.

We review a trial court's ruling regarding a party's motion for new trial under an abuse of discretion standard. *Boudreaux v. Wimberley*, 02-1064 (La.App. 3 Cir. 4/2/03), 843 So.2d 519, *writ denied*, 03-1251 (La. 9/5/03), 852 So.2d 1037.

> Article 1971 of the Louisiana Code of Civil Procedure provides in part, "A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only." The peremptory grounds under which a new trial may be granted are set out in La.Code Civ.P. art.1972:
>
> > A new trial shall be granted, upon contradictory motion of any party, in the following cases:

> (1) When the verdict or judgment appears clearly contrary to the law and the evidence.
>
> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
>
> (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

*Id.* at 522.

As Crystal notes and the trial court mentioned at the hearing, Jeremy's motion for new trial was procedurally defective on its face. It did not include any supporting affidavits as required by La.Code Civ.P. art. 1975. Jeremy now seeks to admit information that he had every opportunity to submit during the pendency of the proceedings but refused to. Louisiana Code of Civil Procedure Article 1972(2) requires that the newly discovered evidence not be available before the trial. The majority of the evidence Jeremy seeks to produce, which was proffered to this court, was readily available. Some of the evidence was a tax return filed after the trial. Jeremy will not be rewarded with a new trial for his own contemptuous behavior. For all of the previously noted reasons addressing the merits of the assignments of error, we find no error in the trial court's denial of Jeremy's motion for a new trial. The interests of justice will not be served in retrying issues already resolved by the trial court. Jeremy's recourse is to file for modification of his child support obligations if he has proof of a material change in circumstances. *See* La.Civ.Code art. 142.

***Sanctions for Frivolous Appeal***

Crystal seeks sanctions in the form of attorney fees incurred for filing a frivolous appeal. She seeks an increase in "the award of attorney fees to her to include the cost of attorney fees for defending the trial court's judgment from the

19

date Jeremy Keith Fontenot filed his Motion for New Trial, that being January 13, 2023, through the conclusion of this appeal." In the answer to appeal, Crystal requests that:

> the December 22, 2022 Judgment of Attorney Fees be modified to increase the amount of attorney fees owed by Jeremy Keith Fontenot from $26,128.00 to $67,478.50, reflecting all attorney fees owed from the trial court's December 22, 2022 judgment through close of business March 5, 2024, plus all additional attorney fees and court costs incurred in responding to this Appeal, which shall be supplemented upon submission of the appellee's brief, or at a date to be determined by this Honorable Court.

Although we grant Crystal's motion to file an untimely appeal, we decline to award sanctions for frivolous appeal. An award for attorney fees for frivolous appeal is strictly construed, as it is penal in nature. La.Code Civ.P. art. 2164; *Scofield, Gerard, Singletary & Pohorelsky, L.L.C. v. Barr*, 10-1347 (La.App. 3 Cir. 3/9/11), 58 So.3d 1127. "Appeals are favored, and the imposition of penalties for a frivolous appeal will not be granted unless they are clearly due." *Id*. at 1130 (quoting *Sigler v. Grace Offshore Co.*, 95-357, p. 6 (La.App. 3 Cir. 10/4/95), 663 So.2d 212, 215 (quoting *Jackson v. East Baton Rouge Parish School Board*, 348 So.2d 739, 741 (La.App. 1 Cir. 1977)). Because we have found merit to some of Jeremy's claims, his appeal was not frivolous, and we decline to award attorney fees for work performed on appeal.

## CONCLUSION

The trial court's judgment awarding Crystal Marie Bennett Fontenot $4,636.00 per month in child support is affirmed. Jeremy Keith Fontenot is entitled to a credit of $8,100.00 for childcare costs that were not incurred. The award to Crystal of $2,500.00 per month in interim spousal support is affirmed. Jeremy was properly held in contempt for failing to produce documents and for arrears. However,

the contempt findings stemming from the January 9, 2023 judgment rule are reversed as Jeremy was not afforded a hearing.  Crystal's motion to file an out of time answer to appeal is granted, but we decline to award sanctions in the form of attorney fees for frivolous appeal.  Costs of this appeal are assessed equally between the parties.

**AFFIRMED IN PART AS AMENDED;**
**REVERSED IN PART**.